SOUTHERN NATIONAL INSURANCE COMPANY *v.* PILLOW.

4-7230                                                     177 S. W. 2d 763

Opinion delivered February 7, 1944.

---

[2] *Pacific Employers Ins. Co.* v. *Industrial Accident Commission,* 19 Cal. 2d 622, 122 Pac. 2d 570, 141 A. L. R. 798.

770

*A. M. Coates*, for appellant.

*Dinning & Dinning*, for appellee.

KNOX, J. On October 23, 1942, appellant, in consideration of an annual premium of $25.98, issued its policy of insurance on the life of Will Pillow, in the principal sum of $200, which policy designated appellee, Mary Pillow, as the beneficiary. On March 5, 1943, the insured died. Upon proof of death being made to and liability denied by appellant this suit was instituted.

It is admitted that the insured died while the policy was in full force and effect. The original answer filed in the cause presents two affirmative defenses, to-wit: (1) that the insured in his application warranted that he was not then and never had been afflicted with either heart disease or kidney trouble, while as a matter of fact he was suffering with both diseases at that time, from which he later died on March 5, 1943, and (2) that the policy provided "that should the insured either directly or indirectly die from either heart or kidney disease within two years from the date of the issuance of the policy the liability of the defendant would be no greater than the total amount of the premiums paid on said policy; that the said Will Pillow died on the 5th of March, 1943, from chronic nephritis and endocarditis, the said chronic nephritis being a disease of the kidneys and endocarditis being a disease of the heart, and the said insured having died within a period of two years from the date of the issuance of said policy, the liability of the defendant, if any at all, is limited to $12.96, which amount the defendant has tendered to the plaintiff and which she has refused to accept, but again tenders the amount herein to the plaintiff and herewith tenders the same into the registry of this court for the use and benefit of the plaintiff and all other persons claiming any interest under said policy." Later an amended and supplemental answer was filed in which the defendant pleaded the further affirmative defense that the insured had made false answers in his application as to whether he had consulted or been treated by a physician within three years prior to the date of said application. The questions in the application which are material to the issue here presented are questions 8 and 12, and the answers thereto, which are: "8. Have any of you consulted or been

treated by a physician for any illness or accident within the last three years? No. 12. Have any of you now, or have you ever had any of the following diseases? (If so, give full information.) A. Tuberculosis? No. . . . j. Heart disease or liver trouble? No. k. Kidney trouble? No. . . ."

Other provisions of the policy upon which appellant relies to defeat recovery read as follows: "(5) This policy and the application herefor constitute the entire contract. All statements and answers in the application herefor shall be deemed warranties and with the understanding and agreement that the insured was in perfect health at the time of signing the application. In event the insured was afflicted with any ailment or disease at the time of signing this application, then any and all benefits hereunder shall be automatically forfeited. Upon faith of which this policy is issued. In further consideration of the company issuing this policy without medical examination, it is understood and agreed that if the insured shall within two (2) years from the date hereof, or any reinstatement hereof, die as a result, directly or indirectly, of paralysis, cerebral hemorrhage, insanity, alcoholism, tuberculosis, or other pulmonary disease or chronic bronchitis, asthma, cancer or any disease of the heart, liver, or kidneys, or any venereal disease, then the liability of the company will be limited to the amount of the premium paid thereon. . . ."

During the course of the cross-examination of appellee appellant's counsel caused to be introduced as exhibit to her testimony the proof or notice of death furnished by appellee to appellant in support of her claim. This proof of death was executed on a form prepared by appellant and contains statements from the beneficiary, the attending physician and the undertaker. Question 4 propounded to appellee and her answer thereto are: "4. Cause of death? (Give full particulars) Pneumonia." The statement of Dr. R. Dan Miller, as attending physician, relative to cause of death, is as follows: "8. Cause of death? Chr. Nephritis. 1. Chief or primary endocarditis (acute). 2. Duration of same. Recent. 3. Con-

tributing or secondary bronchial pneumonia. 4. Duration of same. Recent.''

At the trial Dr. Miller was called as a witness by the insurance company and testified that the insured came to his office three times, to-wit: December 30, 1942, the second week in January and the early part of February, 1943; that he examined and treated him at those and at no other times; that he found insured suffering with chronic nephritis, a disease of the kidneys, and endocarditis, a disease of the heart, also high blood pressure; that when he saw insured in February he was also suffering with bronchial pneumonia; that he had not seen insured for some three weeks prior to his death; that he did not make a blood test nor X-ray pictures; that he did not make a urine analysis, but that he did use a stethoscope during the course of his examination; that in his opinion insured's death was the result of a combination of the three diseases, but that nephritis was the primary cause.

Dr. J. W. Nichols testified as an expert that if examinations on December 30, and in January and February disclosed that insured was suffering from nephritis and endocarditis and that he died therefrom on March 5, then in his opinion insured was suffering from such diseases on October 16, 1942, the date of the application for insurance. On cross-examination he testified that without a urinal test a diagnosis of chronic nephritis would be largely guess work, but that a diagnosis of endocarditis could be made from an examination of the chest with a stethoscope. Dr. Nichols was examined at length relative to the symptoms of endocarditis and nephritis. Testimony of other witnesses is to the effect that insured's condition did not disclose several of the symptoms ordinarily present with such diseases. Both Dr. Miller and Dr. Nichols testified that pneumonia was a disease which could and often did produce death.

Appellant contends that the court erred in giving plaintiff's instruction No. 3 as follows: '' 'The court instructs the jury that the burden rests upon the defendant to prove that the death of the insured resulted direct-

ly or indirectly from one or more of the diseases mentioned in the policy for which it disclaims responsibility'."

Ordinarily proof or admissions establishing death of the insured while the policy is in full force and effect makes a *prima facie* case in favor of plaintiff's right of recovery. 33 C. J. 123. In some jurisdictions. the burden is on the plaintiff to prove that death was not due to a risk or cause which is specifically excepted in the policy. In most jurisdictions, however, including Arkansas, the burden is on the defendant insurance company to show that loss or injury was from an excepted risk or cause. 33 C. J. 111. So, in this case it having been admitted that the death of the insured occurred while the policy was in full force and effect, the burden was on appellant to show that such death resulted from one or. more of such diseases as fell within the exception from liability prescribed in the policy. *Continental Casualty Co.* v. *Tood,* 82 Ark. 214, 101 S. W. 168; *Life & Casualty Ins. Co. of Tenn.* v. *Barefield,* 187 Ark. 676, 61 S. W. 2d 698; *Equitable Surety Co.* v. *Bank of Hazen,* 121 Ark. 422, 181 S. W. 279.

We are, therefore, of the opinion that the court did not err in giving appellee's instruction No. 3.

Appellant contends that the court erred in refusing to give its instruction No. 1, which reads as follows: " 'You are instructed that under the policy sued on and the evidence in this case even though you might find for the plaintiff, your verdict should be for the sum of $12.96'."

Appellant argues that since the attending physician's statement in the proof of death shows that the insured died of chronic nephritis, endocarditis and pneumonia, and since such death occurred within two years from the date of the application, appellee was entitled to recover only the premium paid, which amounted to $12.96.

Among the diseases which fall within the exception from liability prescribed by the policy are "tuberculosis or other pulmonary diseases . . . or any disease of the heart . . . or kidneys. . . ." Although the

proof of death described the pneumonia as being bronchial pneumonia both doctors testified that they regarded such a disease as being pulmonary in character and appellant argues that it is immaterial whether insured died from one or more of the diseases from which he was suffering, since they were all within the exception. Appellee argues that the jury was warranted in finding that death was the result of pneumonia, and that it is not a pulmonary disease. As we view the matter, it is not necessary for us to determine whether the evidence established that bronchial pneumonia is a pulmonary disease.

The answer filed in this cause pleads limitation of the liability because death occurred from "chronic nephritis and endocarditis." No mention is made in the original answer or the amendment thereto of pneumonia, nor is exemption from or limitation of liability sought because death occurred from pneumonia, a pulmonary disease. As a general rule limitation of liability and loss from an expected cause are matters which must be specifically pleaded by the insurer as an affirmative defense, if he would limit or defeat recovery because of such provision of the policy. 29 Am. Jur. 1069; *Mechanics' Ins. Co.* v. *C. A. Hoover Distilling Co.*, (C. C. A. 8th) 182 F. 590, 31 L. R. A., N. S., 873. This court in the case of *Missouri State Life Ins. Co.* v. *Barron*, 186 Ark. 46, 52 S. W. 2d 733, applied this rule and held that failure of the insurer to plead that a contributing cause of death fell within the provisions of the policy exempting insurer from liability therefor, constituted a waiver of such exception as a defense. So here failure of appellant to plead that its liability was limited to a return of the premium paid because insured's death resulted directly or indirectly from pneumonia, amounted to a waiver of such defense.

Since appellant by its answer has seen fit to limit the issue to the question as to whether death occurred from nephritis and endocarditis it will not now be heard to say that even though death occurred from pneumonia its liability is limited because pneumonia is a pulmonary

disease which also falls within the exception clause of the policy.

Instruction No. 2 told the jury that if they should find that insured died of heart and kidney disease their verdict should be in the sum of $12.96. The court, therefore, submitted to the jury the issue as to whether death occurred from heart and kidney disease or from pneumonia, or some other disease, and the jury by its verdict found that death did not result from diseases of the heart or kidneys.

Appellant argues, however, that this issue should not have been submitted to the jury, but that under facts presented by the record, and especially the statement of the physician contained in the proof of death, the court should have directed a verdict in its favor. Statements contained in the proof of death being self serving in nature are not available as evidence for the claimant, but being admissions against interest are available as evidence on behalf of the insurer. Such statements as to the cause of death are not conclusive upon the claimant, but may be explained and rebutted. 3 Appleman, Insurance Law, §§ 1473 to 1476, inclusive; 33 C. J., Insurance, § 666; 29 Am. Jur., Insurance, § 1523; *Fidelity Phenix Ins. Co.* v. *Freidman,* 117 Ark. 71, 174 S. W. 215; *Old American Ins. Co.* v. *Esque,* 173 Ark. 475, 292 S. W. 977; *Travelers, etc., Ins. Co.* v. *Stephens,* 185 Ark. 660, 49 S. W. 2d 364.

Commenting upon the rule with respect to physicians' reports contained in proofs of death Mr. Appleman says: "Even statements or answers of attending physicians contained in the proof of death have been held not to be conclusive if there is anything tending to impair their force or to contradict them." 3 Appleman, Insurance Law, p. 93.

In the case at bar no physician other than Dr. Miller examined the insured so there is in the record no evidence directly contradicting Dr. Miller's findings, but there is much in the record which tends to impair the force of Dr. Miller's testimony. The evidence discloses

that Dr. Miller's examination and treatment of insured was confined to three office visits, which the insured made to his office in Helena. Dr. Miller testified that he made no urine analysis and yet his diagnosis was that insured was suffering from chronic nephritis. Appellant's own witness, Dr. Nichols, says that a diagnosis of chronic nephritis without the benefit of a urine analysis could be nothing more than a good guess. The evidence shows that insured went about his business of farming up until a few weeks before his death; that he apparently had little swelling of the lower limbs. Such conditions are not customarily found in advanced cases of nephritis. Dr. Miller had not seen the insured for three weeks before he died, at which time insured was suffering from three diseases. Under the circumstances the jury might have doubted that Dr. Miller could say with any degree of certainty whether one or all of these three diseases, or some entirely different disease, caused death. Of course, under the terms of the policy and the pleadings filed in this case, and the instructions of the court, if death resulted directly or indirectly from heart or kidney disease, then the liability of appellant would be limited to $12.96, the amount of the premium paid. Since the burden was on the appellant, however, to establish that death resulted directly or indirectly from one or both of these diseases it would have been entitled to a directed verdict upon such issue, only if such facts had been admitted, or established by disinterested witnesses by means of testimony of such character that different men could not have reasonably drawn different conclusions therefrom. *W. O. W. Life Ins. Society* v. *Reese, ante*, p. 530, 176 S. W. 2d 708.

Although Dr. Miller's testimony is not directly contradicted, we are of the opinion that it is not of that character of proof which would have justified the trial court in directing a verdict in favor of appellant. Likewise Dr. Miller's oral testimony given in open court in our opinion was sufficient to impair the force of his statements set out in the proof of death, and, therefore,

the entire issue as to the cause of death was properly submitted to the jury for its determination.

At the close of all of the testimony the insurance company moved for a directed verdict in its favor upon the ground that (1) insured in the application had made false answers with reference to consultations with and treatment by physicians, and (2) at the time of the application insured warranted that he was not suffering from a disease, when as a matter of fact he was suffering at that time from chronic nephritis. The motion contains no reference to endocarditis. This motion was overruled. The evidence relating to the consultation of physicians was elicited from appellee on cross-examination. She says that, on one Saturday night in 1941, she and insured and one York Fuller were in Helena; that insured was suffering with a headache; that they stopped by the office of Dr. Sears, and the insured and Fuller went in and the doctor gave insured some medicine.

This court has often held that questions propounded to applicants for insurance with respect to consultation with and treatment by physicians do not contemplate answers with respect to trivial ailments, and this is true whether the answers constitute warranties or representations. *N. Y. Life Ins. Co.* v. *Parker,* 188 Ark. 39, 64 S. W. 2d 556; *Ark. State Life Ins. Co.* v. *Allen,* 166 Ark. 490, 266 S. W. 449.

Under these circumstances the trial court did not err in refusing to direct a verdict because of the answer made by the insured relating to consultation with physicians.

Another ground urged in support of the plea for a directed verdict was that insured was suffering from chronic nephritis, and in his application he warranted that he was not suffering from this disease. In the application he was not asked the direct question as to whether he was suffering from nephritis, but he was asked, "Have you now or have you ever had any of the following diseases and (a) tuberculosis, (k) kidney trouble?" And the answer thereto is "no."

There is a recital in the application to the effect that the answers made therein "are warranties," and another clause in the application provides: "In consideration of the company issuing us a policy of insurance on our lives without requiring a medical examination, we certify that every statement and answer hereinabove contained we have made is true, and that any untruth or concealment material to the contract shall make this policy wholly void." Ordinarily false answers which constitute warranties defeat recovery whether the insured knows that such answers are false or not. In this case, however, it is provided, "That any untruth or concealment material to the contract shall make this policy wholly void." The word concealment implies a conscious act. In other words, one could not be concealing information of which he had no knowledge. So it appears that the proper construction to be placed upon the language employed in this application relates only to matters known by the applicant to be false and misleading. But regardless of the construction of the language referred to, the facts disclosed in the record would not have justified the court in directing a verdict upon this question. The application for insurance was made on October 16, 1942, while the insured was busy at work in a cotton field picking cotton. The evidence shows that he was busily employed for several weeks thereafter gathering his crop, working practically every day. He was first examined by a physician on December 30, 1942, and the physician states that he found him suffering with chronic nephritis at that time. The physician saw him again in January and February, and he died March 5, 1943. Based on this meager testimony Dr. Nichols testified as an expert that in his opinion the insured was suffering with chronic nephritis at the time the application for insurance was made. The burden was on the insurance company to show that the insured was in fact suffering from chronic nephritis on that date. It is our conclusion that the evidence offered to discharge that burden was not of such character as would justify the trial court directing a verdict based thereon, especially

so when we recall that no urine analysis was made, without which, according to Dr. Nichols, the diagnosis would be largely a guess. In the opinion, delivered this day, in the case of *J. L. Williams & Sons, Inc.,* v. *Moore, ante,* p. 766, 177 S. W. 2d 761, a compensation case, we held it was the commission's province to harmonize the inconsistencies between testimony given by physicians testifying as experts. Likewise here such is within the province of the jury.

Appellant contends that the court erred in refusing to give to the jury its requested instruction No. 3, as follows: "You are instructed that under the terms of the application signed by Will Pillow and the policy issued thereon all answers to the questions propounded to the said Will Pillow in said application as to his state of health and as to his having within three years prior thereto consulted or had been treated by a physician were warranted by him to be true. Therefore, if you should find from the evidence that the said Will Pillow was afflicted with any ailment or disease at the time of signing the application whether he knew of such ailment or disease or not, or, if you should find from the evidence that the said Will Pillow had consulted or had been treated by a physician within three years prior to the 16th day of October, 1942, then you are instructed that the plaintiff cannot recover and your verdict will be for the defendant."

The question presented here has been disposed of by what was said relative to the assignment of error based upon the refusal of the court to direct a verdict. As we there pointed out, although false answers which constitute warranties ordinarily defeat recovery regardless of the good faith of the applicant and his knowledge with respect to such falsity, still, because of the language here employed, it would seem that the parties intended to cover only such matters as were known to the applicant to be false or misleading. Another reason why the instruction was properly refused is that it exempts appel-

lant from liability if insured consulted a physician even for a trivial ailment.

Finding no error, the judgment is affirmed.