# GIPSON v. MUTUAL BENEFIT HEALTH & ACCIDENT ASS'N., OMAHA, NEBRASKA.
## —230 S. W. (2d) 413.

Middle Section.  March 31, 1950.

Petition for Certiorari denied by Supreme Court, June 7, 1950.

Walter M. Haynes, and John F. Green, of Winchester, for plaintiff.

Walker & Hooker, Tyree B. Harris, III, and William Crabtree, all of Nashville, for defendant.

HOWELL, J. This is a suit upon a health and accident policy issued by the defendant to the plaintiff on August 26, 1946. The declaration alleges that the plaintiff has paid all the premiums required of him and that on May 16, 1947, he became wholly disabled by reason of high blood pressure and heart trouble and has been continuously confined within doors and required the attention of a physician and that he is therefore totally disabled. The declaration further alleged that the defendant knew at the time the policy was issued that plaintiff suffered with high blood pressure and charged an additional premium on this account. The declaration further alleged that plaintiff had complied with all the provisions, stipulations and requirements of the policy

and the defendant has wilfully and arbitrarily refused to pay any of the disability benefits to which plaintiff is entitled under the terms of the policy.

The defendant in its plea denied that it was indebted to plaintiff in any amount except the premiums paid and averred that the plaintiff had procured the policy involved by fraud and misrepresentation and it was therefore void.

The case was heard by the trial Judge and a jury and a verdict rendered in favor of the plaintiff for the total benefits provided in the policy, $2,400 and an additional $600 as penalty, in all $3,000 and the costs.

The defendant has perfected an appeal in error to this Court and has assigned errors.

Counsel for the defendant in their brief say: ''The only question which the defendant raises on the evidence by this appeal is whether or not the plaintiff, by his answers to the above questions in his application, has been guilty of such fraud and misrepresentation as renders his policy void and, secondly, whether the heart trouble which plaintiff contends now disables him arose more than six months after the issuance of the policy, as required by the policy's terms.''

These two questions therefore are the ones to be determined by this Court.

Question No. 14 in the application for the policy which was answered ''None'' is as follows: ''14. Have you ever had any of the following diseases: Rheumatism, neuritis, arthritis, sciatica, epilepsy, appendicitis, diabetes, any kidney or bladder trouble, any disease of the brain or nervous system, heart disease, tuberculosis, bronchitis, gall bladder trouble, any stomach trouble, any intestinal trouble, hernia, cancer, syphilis, high or low blood pressure, tonsilitis, rectal trouble, malaria?''

Question No. 15 answered "No" is as follows: "15. Have you received medical or surgical treatment or had any local or constitutional disease not mentioned above within the last five years?"

The applicable Code Section 6126, Code of Tennessee, is as follows: "Misrepresentation or warranty will not avoid policy, when.—No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increase the risk of loss."

The plaintiff testified in part:

"Q. Now, did you tell the agent anything about your condition or whether or not you had been to a doctor before talking to him? A. When he approached me to sell me some insurance, I told him, 'There is no need of you wasting your time and taking up my time because I have had a history of high blood pressure for ten or fifteen years.' He said, 'We sell risks on high blood pressure.' I said, 'If you do, I will be glad to buy a policy.'

"Q. On the questions in the application for the policy, who filled in the answers, you or the agent? A. The agent.

"Q. He did all the writing? A. Yes, sir.

"Q. And then you signed the policy application? A. Yes, sir.

"Q. He did not show, or do you know whether he showed that you had high blood pressure or not? A. I don't know.

"Q. Did the company refuse to issue a policy, Mr. Gipson, that you had originally planned to buy? A. Yes, sir. Mr. Yates came back up there about September sometime and told me they turned that policy down, he had something about the same thing, but it would cost me more money due to my high blood pressure and said, 'You will be rated up as a man sixty-five years old' and I asked him would that carry the same disability and he said yes it would carry the same disability. He said 'If you get sick or disabled to work, you will receive one hundred dollars a month as long as you live.' I said, 'I will accept it.'

"Q. Was that policy then issued to you? A. That policy was issued to me."

The plaintiff further testified positively that he had consulted doctors previously and had been treated for high blood pressure and that these doctors never did tell him that he had heart trouble.

Dr. Henry T. Kirby-Smith, the only witness for the defendant, testified that his record of Jess Gipson showed that he saw him on January 26, 1946, and his "impression" was angina pectoris, blood pressure was 180/100, he saw plaintiff again on March 22, 1946, and he had pains in arms and legs and blood pressure was 190/120, again on May 27, 1946, "occasional spell of precordial pain. Blood pressure 210/100," again on April 8, 1947, "can't sleep well and is tired, blood pressure 210/120."

Dr. Kirby-Smith testified from his record and said in his letter to counsel for plaintiff, "Now whether I told Mr. Gipson he had angina pectoris or not, I do not remember. But as it is my policy to tell people what I think is wrong with them I feel sure that I must have told him

that the pain was probably due to the heart when I examined him on January 26, 1946."

The answer to question No. 14 above was "None." The plaintiff had told the agent soliciting the policy that he had a history of high blood pressure for ten or fifteen years and the policy was written by the company with knowledge of his high blood pressure and a larger premium charged on that account. The defendant wrote its agent on September 5, 1946, in part as follows:

"Mr. F. E. Yates               Re—Jess Gipson
"Winchester, Tenn.            Decherd, Tenn.
                                    110-329998-46M

"Dear Mr. Yates:

"Enclosed find the above policy dated August 21, in lieu of the form 104S F applied for and owing to this change you will need to collect an additional $8.00 in premium from Mr. Gipson. The Home Office advise that it was necessary to make this change to 110 because of applicant's high blood pressure and the 110 was the most liberal contract that could be issued . . ."

Thus it is seen that the defendant company was fully informed as to the high blood pressure of the plaintiff at the time the policy was issued.

Question No. 15 as to whether plaintiff had received medical attention for any disease "not mentioned above" was truthfully and correctly answered "No" so far as plaintiff was informed or advised. Blood pressure was mentioned in Question 14 and the defendant was fully informed as to it.

We are of the opinion that it was for the jury to determine from the testimony whether or not the plaintiff had heart trouble more than six months before the policy was issued, giving due weight to the testimony of the plaintiff and of the witness for the defendant.

■ We are of the opinion that the jury was justified in finding that the plaintiff did not procure the policy by fraud or wilfully misrepresent his condition at the time the policy was applied for.

In the case of Stubblefield v. Mut. Benefit Health & Accident Ass'n., 11 Tenn. App. 411, this Court said:

"The statute, Shannon's Code, Sec. 3306, provides that no misrepresentation 'shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation (or warranty) is made with actual intent to deceive, or unless the matter represented increase the risk of loss.'

"This statute incorporates itself in every policy of insurance issued, and serves as an effectual bar to the destruction of the rights of the insured, or the beneficiary, where innocent mistakes of fact which are not material to the risk have been made. Insurance Co. & Stallings, 110 Tenn. 1, 72 S. W. 960.

"The representation which would avoid the policy must be false in the sense that it was made with intent to deceive and concealed matters which increased the risk of loss. Volunteer State Life Ins. Co. v. Richardson, 146 Tenn. 589, 244 S. W. 44, 26 A. L. R. 1270."

In National Life & Accident Ins. Co. v. Lewis, 19 Tenn. App. 459, 89 S. W. (2d) 898, 902, this Court also said:

"The mere fact that false representations were made in the application is not, without more, sufficient to avoid the policy. It is provided by statute that, 'no written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless

the matter represented increase the risk of loss.' Code, Section 6126.

"If the application contains false representations which 'increase the risk of loss,' such misrepresentations will be deemed material, and will 'defeat or void the policy or prevent its attaching,' whether made 'with actual intent to deceive' or not. When it has been determined that the answers of the applicant were untrue, it becomes a question of law for the court as to whether such misrepresentations constitute matter increasing the risk of loss; and a misrepresentation about any matter of sufficient importance, in the opinion of the court, to naturally and reasonably influence the judgment of the insurer in making the contract, is a misrepresentation that 'increases the risk of loss' within the meaning of the above-quoted statute. Mutual Life Insurance Co. v. Dibrell, 137 Tenn. 528, 529, 194 S. W. 581, L. R. A. 1917E, 554; Volunteer State Life Insurance Co. v. Richardson, 146 Tenn. 589, 244 S. W. 44, 26 A. L. R. 1270; Hughes Bros. v. Aetna Insurance Co., 148 Tenn. 293, 301, 255 S. W. 363, 366; National Life & Accident Insurance Co. v. American Trust Co., 17 Tenn. App. 516, 542, 545, 68 S. W. (2d) 971."

The evidence in this case does not justify the conclusion that any false representations were made, or that any answers given by plaintiff to the agent of the defendant were untrue.

In a recent case reported in 215 Ark. 892, 224 S. W. (2d) at pages 21, 24, Aetna Life Ins. Co. v. Mahaffy, the Supreme Court of Arkansas said:

"The question is whether a preponderance of the evidence in the record shows a knowing misrepresentation, or knowing concealment, by Mahaffy, of the fact of incipient blindness.

" 'If the applicant states what he honestly believes to be true regarding his physical condition, the fact that it turns out to be not true does not avoid the policy, as it is a representation merely. Of course, if his statements are false and known to him to be false, and are made fraudulently, they have the same effect as warranties . . . The question will be then, Were his statements made in good faith, if untrue, or were they made knowing them to be false and for the purpose of defrauding . . .?' Harper v. Bankers' Reserve Life Co., 185 Ark. 1082, 1085, 51 S. W. (2d) 526, 528. 'The questions propounded in the application . . . call for answers founded on the knowledge or belief of the applicant, and in such cases a misrepresentation or omission to answer will not avoid the policy unless willfully or knowingly made with an (intent) to deceive.' Metropolitan Life Insurance Co. v. Johnson, 105 Ark. 101, 106, 150 S. W. 393, 395. 'This court has often held that questions propounded to applicants for insurance with respect to consultation with and treatment by physicians do not contemplate answers with respect to trivial ailments . . . .' Southern National Insurance Co. v. Pillow, 206 Ark. 769, 778, 177 S. W. (2d) 763, 767. 'The burden is upon (the insurer) to establish the fraud by proving affirmatively the falsity, materiality, and bad faith in the representations made by the insured in the application regarding his health.' Old Colony Life Insurance Co. v. Julian, 175 Ark. 359, 299 S. W. 366, 368.''

It is insisted for the defendant that the question whether or not the misrepresentation in the application for an insurance policy was material to the risk and voided the policy was a question of law for the court and that the trial court should have granted its motion for instructions in its favor and it relies upon the case of

Mutual Life Ins. Co. v. Dibrell, 137 Tenn. 528, 194 S. W. 581, L. R. A. 1917E, 554, and other cases. In the Dibrell case it was held that whether a misrepresentation increased the loss was a question of law for the court and not for the jury. It was not disputed in that case that a material misrepresentation had been made. In this case the plaintiff's contention was that no misrepresentation was made in the application for the policy and that the answers given by him to the agent of the defendant were the truth.

We cannot say that, under the facts of this case, the defendant and its agent being fully aware of the high blood pressure of the plaintiff before the policy was issued and the uncertainty evidenced by the doctor who testified for the defendant as to whether or not plaintiff had heart trouble, the trial court erred in denying defendant's motion for peremptory instructions.

It is insisted that the Court erred in permitting the plaintiff to recover disability payments accruing after the filing of the suit.

It is true that without proper application the plaintiff could not recover payments accruing after the filing of the suit. This matter is fully discussed by this Court in Phifer v. Mutual Benefit Health & Accident Ass'n, 24 Tenn. App. 600, 148 S. W. (2d) 17, and in Brandt v. Mutual Benefit Health & Accident Ass'n, 30 Tenn. App. 14, 202 S. W. (2d) 827.

In this case the prayer of the declaration is as follows: "Wherefore, the plaintiff, Jess Gipson, sues the defendant, Mutual Benefit Health and Accident Association, Omaha, Nebraska, for the sum of One Thousand Dollars ($1,000.00) Dollars for disability benefits due him under said policy of insurance issued by the defendant, same being Policy No. 329998-46M, which is filed as Exhibit

'A' hereto, which have accrued from May 16, 1947, together with such additional amounts that may accrue from the date of filing of this cause, plus twenty-five per cent (25%) statutory penalty as provided by law, and demands a jury to try his cause.''

Upon the trial the following occurred:

''Mr. Harris: If the Court please, this lawsuit was filed in March 1948. I submit that there is no reason to prove any alleged disability subsequent to the date of the filing of the lawsuit.

''Mr. Green: If Your Honor deems necessary, we will file a supplemental pleading, however, I think the declaration takes care of it. We asked for disability benefits due him under the policy which accrued from May 16th, together with such additional amounts that may accrue from the date of filing this suit to the date of the trial of this cause.

''The Court: And then in addition it may reflect on his condition prior to the filing of the suit. I think it is admissible.

''Mr. Harris: I of course want to except to your Honor's ruling and would like to ask the Court by your Honor's ruling does your Honor mean to hold that in the event of a recovery you could have a recovery past the date of the filing of the lawsuit?

''The Court: I am not passing on it, I simply ruled this was admissible. It might reflect on the condition prior.

''Mr. Green: Your Honor, I believe it would be competent and I move the Court we be allowed to amend the declaration to pray for the recovery of $2,400 which is the maximum under the policy for twenty-four months' disability, which twenty-four months have accrued up to this time.

"The Court: Take your amendment and we will thresh that out later.

"Mr. Harris: I didn't understand your Honor. Your Honor permits the amendment?

"The Court: Yes."

The case was then proceeded with as if a formal amendment had been prepared and filed.

We cannot say that the trial Judge abused his discretion in permitting the amendment.

It is insisted for the defendant that the jury should not have allowed the penalty sued for. Under the facts of this case we do not think that the defendant wilfully, arbitrarily, and without good cause refused to pay the claim of the plaintiff and the judgment of the trial court will be modified so as to disallow the penalty of $600.

The assignments of error except as indicated as to the penalty are overruled and the judgment of the Circuit Court as modified is affirmed.

A judgment will be entered here in favor of the plaintiff and against the defendant for $2,400 and interest from August 31, 1949, and the costs of the case.

Modified and affirmed.

Felts and Hickerson, JJ., concur.