# LITTLE v. WASHINGTON NAT. INS. CO.—241 S. W. (2d) 838.

Eastern Section.    March 13, 1951.

Petition for Certiorari denied by Supreme Court, June 16, 1951.

594

Nathan Orris Hale, of Knoxville, for plaintiff in error.

C. W. Key, of Knoxville, for defendant in error.

McAMIS, J.   This is an action to recover $118.30, plus statutory penalty, claimed to be due under a family group hospital insurance policy providing benefits at the rate of $8 per day while any member of plaintiff's family should be confined to a hospital for treatment.   The action is based upon confinement of plaintiff's wife in the East Tennessee Baptist Hospital at Knoxville from February 18, 1949, to March 3, 1949, a period of 13 days, to which is added hospital service expense of $14.30.

At the close of plaintiff's evidence, the trial judge found that, under the undisputed evidence, the application contained material misrepresentations with respect to plaintiff's wife and, accordingly, sustained defendant's motion for a directed verdict.   Plaintiff thereupon filed a motion for a new trial which was overruled and he has prosecuted the present appeal in error.

By special pleas the defendant relied upon the falsity of plaintiff's answers to the following questions taken from the application dated June 25, 1948:

"(8)   Do you or any such members now have or have you or they ever had or been under observation for any of the following: Rheumatism, gout, arthritis, neuritis, sciatica, paralysis, venereal disease, cancer, goiter, tumor, high blood pressure, diabetes, varicose veins, appendicitis, hernia, piles, tonsilitis, fits, mental infirmity, or any gall bladder, tubercular, heart, stomach, kidney or bladder trouble, disease of either ear or eye?   No.

"(9) Are you and all such members now in good health, free from injury, deformity, physical impairment or disease to the best of your knowledge and information? Yes.

"(10) Have you or any such members

"(a) ever had an operation? Yes.

"(b) been advised to have an operation?———

"If so, state who, nature and date, and doctor's name and address. Appendicitis operation in 1942.

"(11) From what accident or sickness have you or any such members been treated by or consulted a doctor during the last 5 years? None.

"(12) Does any female named in answer to Question 2 now have or has she ever had or been under observation for, any menstrual or female disorder, or uterine, ovarian or vaginal trouble or disease of breast? No."

It is noted that specific inquiry was made as to heart trouble, physical impairment or disease, past operation, consultation with a doctor during the past 5 years and female disorders, including as to the last the question of whether or not a female member of the family had been "under observation" for the same.

The proof shows without dispute that prior to 1938, Mrs. Little consulted Dr. S. B. Peters for heart trouble which she described as a heart murmur. After 1938 she was a patient of Dr. H. Dewey Peters. In 1941 Dr. H. Dewey Peters performed an operation on her for appendicitis as disclosed in the application, and at the same time removed both fallopian tubes accompanied by a suspension of the uterus. It also appears that Dr. Peters examined Mrs. Little from time to time in connection with certifying her fitness to teach in the public schools of Knoxville. He also attended her on or about February 18, 1949, found her to be nervous and suffering from ex-

haustion for which he recommended that she undergo confinement in the hospital as indicated.

Although Mrs. Little attempted in her testimony to minimize the heart condition, she admitted that the doctor had told her she should take "things a little lighter"; that as she grew older it might become worse; that when she consulted Dr. Peters for a medical check up for the city schools in 1947 she told him that she was suffering from dizziness and a nervous condition; that for many years she had had heart palpitation "if I kind of over-did." She also admitted that the fallopian tubes were removed and the uterus suspended in the operation by Dr. Peters in August, 1941.

It is also shown without dispute that plaintiff had been living with his wife during all of these years and was familiar with her condition. He undertakes to state that he did not read the application and that he answered the questions truthfully but his testimony does not purport to show that he mentioned the heart trouble with which his wife had been suffering or the removal of the female organs although specific inquiry was made as to these conditions as well as to any physical impairment or disease of any member of the family covered by the policy. The answer to the inquiry as to any operations performed upon members of the family indicating only an appendicitis operation, would naturally be taken as excluding other operations.

Code Section 6126 provides: "No written or oral mis-representation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or

warranty is made with actual intent to deceive, or unless the matter represented increased the risk of loss.''

Under this statute when it has been determined that the answers contained in the application were untrue, it becomes a question of law for the court as to whether such misrepresentations materially increase the risk of loss. Any misrepresentation which naturally and reasonably influences the judgment of the insurer in making the contract is a misrepresentation that ''increases the risk of loss'' within the meaning of the statute. Mutual Life Insurance Co. v. Dibrell, 137 Tenn. 528, 529, 194 S. W. 581, 583; L. R. A. 1917 E, 554; Volunteer State Life Ins. Co. v. Richardson, 146 Tenn. 589, 244 S. W. 44, 26 A. L. R. 1270; Hughes Brothers v. Aetna Ins. Co., 148 Tenn. 293, 301, 255 S. W. 363, 366; National Life & Accident Ins. Co. v. American Trust Co., 17 Tenn App. 516, 542, 545, 68 S. W. (2d) 971; National Life & Accident Ins. Co. v. Lewis, 19 Tenn. App. 459, 89 S. W. (2d) 898, 902; Gipson v. Mutual Benefit Health & Accident Association, 33 Tenn. App. 167, 230 S. W. (2d) 413.

The rule applies with special force where the policy involves the soundness of health of the applicant and is issued without a medical examination, as here. DeFord v. National Life, etc., Ins. Co., 182 Tenn. 255, 185 S. W. (2d) 617. Another relevant consideration is the presence or absence, as the case may be, of direct inquiries as to specific diseases. Knights of Pythias v. Cogbill, 99 Tenn. 28, 41 S. W. 340. Inquiries with respect to a specific disease indicate that the insurer may regard it as material to the risk and it is the duty of the applicant to fully and frankly disclose the true condition as known to him. Interstate Life & Accident Co. v. Potter, 17 Tenn. App. 381, 68 S. W. (2d) 119; Brotherhood of Railroad Trainmen v. Daniels, 18 Tenn. App. 264, 75 S.

W. (2d) 1019; Standard Life Ins. Co. v. Strong, 19 Tenn. App. 404, 89 S. W. (2d) 367.

An applicant's false statement in the application as to specific diseases will not constitute a material misrepresentation rendering the policy void unless the prior diseases, concealed by the applicant, were of such a nature as to bear upon his general health. Interstate Life & Accident Co. v. Potter, 17 Tenn. App. 381, 68 S. W. (2d) 119.

Upon making inquiry as to whether the persons to be insured were in "good health", the insurer was entitled to information within the knowledge of the applicant concerning grave, important or serious diseases. Metropolitan Life Ins. Co. v. Chappell, 151 Tenn. 299, 269 S. W. 21; Life & Casualty Ins. Co. v. King, 137 Tenn. 685, 698, 195 S. W. 585; Metropolitan Life Ins. Co. v. McGowan, 2 Tenn. App. 341.

As we have seen, the applicant in this case concealed from the insurer not only that Mrs. Little had consulted a physician for female disorders but that she had suffered a removal of the fallopian tubes and a suspension of the uterus. Likewise denied to the Company was the knowledge that she had consulted a physician for heart trouble which had impaired her health to the point that overwork or overexertion resulted in heart palpitations. We think this was an "impairment or disease" of which the insurer was entitled to be advised under Inquiry 9 of the application. Although the matter misrepresented need not actually occasion or contribute to a loss, Independent Life Ins. Co. v. Russell, 18 Tenn. App. 622, 80 S. W. (2d) 846, we think it can be safely assumed that a person afflicted with heart trouble cannot withstand the impact of other diseases as well as persons not so afflicted and, for that reason, are more likely to need hospi-

talization. On the whole case, our conclusion is that the trial court correctly determined as a matter of law that the matters misrepresented were calculated to affect the judgment of the insurer in issuing the policy and were material to the risk. Accordingly, there was no error in directing a verdict for defendant.

Finding no error, it results that all assignments must be overruled and the judgment affirmed with costs.

Hale and Howard, JJ., concur.