MRS. DONNA S. TEGETHOFF, Complainant-Appellant, v. METROPOLITAN LIFE INSURANCE COMPANY, Defendant-Appellee.—424 S.W.(2d) 565.

Western Section. September 8, 1966.

Certiorari Denied by Supreme Court December 5, 1966.

Hearn W. Tidwell, Mitchell, Tidwell, Mitchell, Rosenstein & Clark, Memphis, for appellant.

Jack Petree, Evans, Petree, Cobb & Edwards, Memphis, for appellee.

CARNEY, J. The complainant below, Mrs. Donna S. Tegethoff, has appealed from a decree of the Chancellor dismissing her original bill. A jury was demanded and later withdrawn by consent. Mrs. Tegethoff had sought recovery of $946.93 alleged to be due and owing to her under the terms and provisions of a comprehensive medical expense policy plus the 25% penalty provided by T.C.A. Section 56-1105.

The primary defense of Metropolitan was that Mrs. Tegethoff had consciously and deliberately withheld from defendant's agent who prepared the application information concerning her physical condition and failed to disclose several illnesses for which she had recently been treated by one or more physicians; and that such misrepresentations were material to the risk and that the defendant would not have issued the policy of insurance sued upon if it had known the truth. Second, the company

insisted that the hospital and medical expenses for which the complainant sued were the direct result of pre-existing illness and therefore not covered under the express terms of the policy. The policy was issued without medical examination. Defendant returned all of the premiums paid under the policy.

The Chancellor found that the complainant was well aware of the omissions of the medical information from her application; that the policy of insurance was obtained by the complainant by fraud in that she failed to make truthful and full answers to the questions contained in the application. He adjudged the policy to be null and void. The Chancellor found, however, that the hospital bills for which the complainant sued were for a cardiac condition and that such cardiac condition did not pre-exist the issuance of the policy.

The complainant has filed eight assignments of error all of which assail the action of the Chancellor in finding the complainant guilty of perpetrating a fraud upon the insurance company. The defendant Metropolitan Insurance Company has appealed from the finding of the Chancellor that part of the complainant's expenses sued upon were not the result of a pre-existing condition. We notice the assignments of error of the complainant first.

The complainant is a divorcee, age 37. At the time the policy sued on was purchased she was employed as a secretary for the Mid-South Lions Sight Service in Memphis, Tennessee, a charity organization engaged in helping restore sight to the blind. She had one son, Charles F. Tegethoff, age 18, who was also covered under the policy. At the time of the trial she was employed as a secretary for Southern Builders, Inc.

Several days prior to September 27, 1963, Mrs. Tegethoff was desirous of purchasing some medical and hospital insurance and called several agencies by telephone and discussed various policies. Among the companies called was the defendant Metropolitan Life Insurance Company and she talked to a manager, Mr. Satterfield. She made appointment for Mr. Satterfield to come to her home and take an application from her. On the appointed date, which was Friday, September 27, 1963, Mr. Satterfield had to leave Memphis and go to Cairo, Illinois, to visit his mother and he asked his coworker, Mr. William Browder, to go out to Mrs. Tegethoff's home and take the application.

Mr. Browder went to the home of Mrs. Tegethoff and took her application for the medical and hospital policy. Mrs. Tegethoff signed the application after he filled in the answers to the various questions. Mr. Browder did not date nor sign the application at the home of Mrs. Tegethoff but carried the application back to his office. Since the commission was to belong to Mr. Satterfield, he placed the application in Mr. Satterfield's box at the Memphis office. Mr. Satterfield received the application sometime about September 30, 1963, which date he filled in on the application as the date it was signed by Mrs. Tegethoff. Mr. Satterfield signed the application indicating that he had personally taken the answers of Mrs. Tegethoff to the questions and that he had seen her sign the application. Mr. Browder and Mr. Satterfield both testified that they had been reprimanded by their employer for their conduct in permitting Mr. Satterfield to sign the application instead of Mr. Browder who actually took it.

We copy pertinent questions and answers from the application as follows:

"11. Have you or any of the said family members, within the past five years, had any treatment, examination, or advice, by a physician or other practitioner, or at a clinic, hospital, dispensary, or sanatorium? ——— (If yes, give particulars.)

Names Charles Details or Reason Removed lower lobe of right lung. Month and Year 12-28-60 Duration 3 weeks Physician or Practitioner Dr. F. I. Alley Hospital or Institution Methodist Hosp. Memphis, Tenn.

12. Have you or any of the said family members ever:

(a) had a surgical operation? Yes

(b) been advised to have a surgical operation that was not performed? No
(If yes in either case, give particulars.) See #11 and Donna—Complete Hysterectomy—1953—St. Joseph Dr. Mackey.

13. (a) Have you or any of the said family members any deformity, or loss of limbs, or known impairment of sight or hearing? No

(b) Have you or any of the said family members ever had, so far as you know, any bodily or mental disease, disorder, abnormal physical condition, or impairment not referred to in your answers to questions 11 or 12? No (If yes in either case, give particulars.)"

The policy was not issued by Metropolitan until December 31, 1963. Mr. Satterfield explained that the policy was delayed while the company sought information from Dr.

Alley concerning the removal of a lobe of the right lung of Charles Tegethoff and viewed the son's x-rays.

In addition to the hysterectomy in 1953 shown on the application, proof is uncontradicted that Mrs. Tegethoff had been in poor health for a number of years. In 1955 she was admitted to St. Joseph Hospital in Memphis suffering from lack of sensation in her left hand and fingers and middle forearm. In 1956 she was again admitted to St. Joseph Hospital for kidney stones. In 1958 she was admitted to the Baptist Hospital in Memphis, Tennessee, for paralysis of her left side, being unable to move her left arm and leg. Her illness was diagnosed as multiple sclerosis, probably incorrectly.

Dr. Arthur L. Bellott, Jr. of Memphis, Tennessee, testified that he first began treating Mrs. Tegethoff in March, 1959, that he saw and treated her regularly thereafter for hypertension and for hemiparesis which is a partial paralysis on the left side of the body which accompanied the hypertension. In April, 1964, he diagnosed Mrs. Tegethoff as having sustained or developed a heart condition for the first time. This heart condition gave rise to the medical and hospital expense which the Chancellor found not to have pre-existed the issuance of the insurance policy sued on in the present case.

Upon the trial Mrs. Tegethoff testified that she told the agent Browder at the time the application was filled out that she had been under Dr. Bellott's care for about four years for hypertension and partial paralysis and that agent Browder told her he was interested only in surgery which had been performed on her. Mrs. Tegethoff also testified that she told him that she had been examined by Drs. Raskind and Gotten, neurosurgeons, regarding her

paralysis and that their diagnosis of multiple sclerosis was incorrect. Mrs. Tegethoff stated that at the time she signed the application she did not read it and that because of the position in which Mr. Browder was sitting she could not read the answers which he wrote to the various questions.

However, Mrs. Tegethoff testified that when the policy was issued and delivered to her by Mr. Satterfield on December 31, 1963, she read it including a copy of her answers on the application and noticed that Mr. Browder had failed to include among her answers the information which she had given him concerning treatment by Drs. Bellott, Raskind and Gotten. She testified that she commented on the omission to her mother but did not understand that she had any obligation to call the defendant company and notify them of the omissions. Agent Browder testified affirmatively that Mrs. Tegethoff never mentioned treatment for paralysis nor hypertension nor diagnosis of multiple sclerosis and that she never mentioned the names of Dr. Bellott, Dr. Raskind or Dr. Gotten. He stated that if she had mentioned the diagnosis of multiple sclerosis he probably would not have completed the application because his company would not have written the policy. He stated that if she had mentioned the treatment for hypertension and paralysis by Dr. Bellott, his company would have required statements from Dr. Bellott. Agent Browder received no commission on the policy. Agent Satterfield received $51.00 as his commission.

. Solicitors for the applicant, Mrs. Tegethoff, cite T.C.A. Section 56-705 which provides that agents of the insurance company are not agents of the insured. They also insist that knowledge imparted by Mrs. Tegethoff to Mr.

Browder of present illnesses which, if insisted upon by the company, would invalidate the insurance contract from its inception, that such knowledge imparted to the company's agent constituted knowledge to the company itself and that the issuance of the policy thereafter constituted a waiver of the conditions in the contract inconsistent with the known facts; citing Life & Casualty Insurance Company v. King, 137 Tenn. 685, 195 S.W. 585; Henry v. Southern Fire & Casualty Co., 46 Tenn.App. 335, 330 S.W.2d 18; Vulcan Life & Accident Insurance Co. v. Segars, 216 Tenn. 154, 391 S.W.2d 393.

 Solicitors insist that agents Browder and Satterfield are thoroughly discredited as witnesses because: (1) They dated the application wrong; (2) Browder failed to sign the application as agent for the company and instead permitted his coworker, Satterfield, to sign a false statement on the back of the application to the effect that he, Satterfield, saw the applicant, Mrs. Tegethoff, sign the application; (3) Mr. Browder admitted that the application showed that the new business was obtained as a result of the solicitation by Mr. Satterfield when as a fact Mrs. Tegethoff had called in for the policy. These false statements went to the credibility of Mr. Browder and Mr. Satterfield as witnesses.

The Chancellor saw and heard the witnesses in open court on oral testimony. He found the issues of fact in favor of the defendant. In view of the extensive treatment which Mrs. Tegethoff received by several different physicians for very serious illnesses we cannot say that her testimony preponderates against the finding of His Honor the Chancellor. This we must do before we can reverse the holding of the Chancellor. T.C.A. Section 27-303.

T.C.A. Section 56-1103 provides as follows:

"Misrepresentation or warranty will not avoid policy.—Exceptions.—No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increase the risk of loss."

From Little v. Washington National Ins. Co., 1951, 34 Tenn.App. 593, 241 S.W.2d 838, we quote as follows:

"Under this statute when it has been determined that the answers contained in the application were untrue, it becomes a question of law for the court as to whether such misrepresentations materially increase the risk of loss. Any misrepresentation which naturally and reasonably influences the judgment of the insurer in making the contract is a misrepresentation that 'increases the risk of loss' within the meaning of the statute. Mutual Life Insurance Co. v. Dibrell, 137 Tenn. 528, 529, 194 S.W. 581, 583; L.R.A. 1917E, 554; Volunteer State Life Ins. Co. v. Richardson, 146 Tenn. 589, 244 S.W. 44, 26 A.L.R. 1270; Hughes Brothers v. Aetna Ins. Co., 148 Tenn. 293, 301, 255 S.W. 363, 366; National Life & Accident Ins Co. v. American Trust Co., 17 Tenn.App. 516, 542, 545, 68 S.W.2d 971; National Life & Accident Ins. Co. v. Lewis, 19 Tenn.App. 459, 89 S.W.2d 898, 902; Gipson v. Mutual Benefit Health & Accident Association, Omaha, Neb., 33 Tenn. App. 167, 230 S.W.2d 413.

The rule applies with special force where the policy involves the soundness of health of the applicant and is issued without a medical examination, as here. De-Ford v. National Life, etc., Ins. Co., 182 Tenn. 255, 185 S.W.2d 617. Another relevant consideration is the presence or absence, as the case may be, of direct inquiries as to specific diseases. Knights of Pythias v. Cogbill, 99 Tenn. 28, 41 S.W. 340. Inquiries with respect to a specific disease indicate that the insurer may regard it as material to the risk and it is the duty of the applicant to fully and frankly disclose the true condition as known to him. Interstate Life & Accident Co. v. Potter, 17 Tenn.App. 381, 68 S.W.2d 119; Brotherhood of Railroad Trainmen v. Daniels, 18 Tenn.App. 264, 75 S.W.2d 1019; Standard Life Ins. Co. of the South v. Strong, 19 Tenn.App. 404, 89 S.W.2d 367.

An applicant's false statement in the application as to specific diseases will not constitute a material misrepresentation rendering the policy void unless the prior diseases, concealed by the applicant, were of such a nature as to bear upon his general health. Interstate Life & Accident Co. v. Potter, 17 Tenn.App. 381, 68 S.W.2d 119.

Upon making inquiry as to whether the persons to be insured were in 'good health', the insurer was entitled to information within the knowledge of the applicant concerning grave, important or serious diseases. Metropolitan Life Ins. Co. v. Chappell, 151 Tenn. 299, 269 S.W. 21; Life & Casualty Ins. Co. v. King, 137 Tenn. 685, 698, 195 S.W. 585; Metropolitan Life Ins. Co. v. McGowan, 2 Tenn.App. 341.''

■ It is the general rule that one who enters into a written contract, negotiated by an agent, is presumed to

know the contents of the writing and is bound thereby—although peculiar and exceptional circumstances may affect the application of this general rule. See Hermitage Health and Life Insurance Co. v. Buchignani, 1961, 49 Tenn.App. 223, 354 S.W.2d 94; DeFord v. National Life and Accident Ins. Co., 182 Tenn. 255, 265, 185 S.W.2d 617, 621.

In the case at bar at the time the application was written out by the agent complainant was under treatment for hypertension and a neurosurgeon had told her she suffered from multiple sclerosis, an incurable disease, though apparently the neurosurgeon has been proven wrong. By her own admission when he received the policy containing the application she noticed that the application did not show her illnesses and medical treatment during the past five years and she made no attempt to advise the company of the omission.

In the recent case of Sloop v. Mutual of Omaha Insurance Company, 1966, 55 Tenn.App. 656, 404 S.W.2d 265, opinion by Judge Cooper, it was held that where an applicant for insurance failed to disclose an "anxiety condition" of such severity as to require hospitalization and psychiatric treatment and failed to disclose two grand-mal seizures while in the hospital and failed to disclose a known and progressive decrease in the applicant's ability to use his lower extremities, such concealments were material to the risk and affected the judgment of the insurance company in issuing a policy to the applicant.

In the case at bar we affirm the holding of the Chancellor that Mrs. Tegethoff did deliberately withhold information from the company concerning her illness and

thereby misrepresented the condition of her health. We also affirm the holding of His Honor the Chancellor that such misrepresentation did materially increase the risk and that the defendant insurance company would not have issued the policy sued on in the present case if the application had shown a diagnosis of multiple sclerosis. Therefore, the assignments of error of Mrs. Tegethoff are all overruled and the judgment of the lower court is affirmed.

We also concur in the finding of His Honor the Chancellor that the medical and hospital bills for which the complainant brought her suit in the present case were not the result of a pre-existing illness and the assignment of error of the appellee is overruled.

Decree will be entered in accordance with the above and the costs of the appeal will be taxed against the complainant.

Avery, P.J. (W.S.), and Bejach, J., concur.