Virginia Ann JOHNSON,
Plaintiff-Appellee,

v.

STATE FARM LIFE INSURANCE CO.,
Defendant-Appellant.

Court of Appeals of Tennessee,
Western Section at Jackson.

Nov. 17, 1981.

Permission to Appeal Denied by Supreme Court Jan. 25, 1982.

David Hessing, of Dunlap, Dunlap, Hessing & Neese, Paris, for defendant-appellant.

Andrew B. Frazier, Jr., of Frazier & Whitworth, Camden, for plaintiff-appellee.

TOMLIN, Judge.

This appeal comes to this Court from a decree of the Chancery Court of Benton County, decreeing that a decreasing-term life insurance policy issued by the defendant was in full force and effect at the time of the insured's death. The insured's beneficiary sued the defendant State Farm, the insurer, seeking to have the policy on her late husband's life declared valid, after State Farm had advised her that because of misrepresentations on her husband's insurance application, the policy issued was invalid. Two issues are presented to this Court by this appeal: (1) Were certain of the answers given by the decedent on the insurance application false answers? and (2) If false, did they increase the risk of loss to the defendant, as proscribed in T.C.A. Section 56–7–103? For the reasons stated below, we answer both of these issues in the affirmative, and reverse the trial court.

The facts of the case relevant to these issues are as follows: Plaintiff's decedent, Roger Gene Johnson, signed an application

for decreasing-term life insurance, sometimes called "credit life," or "mortgage insurance," and submitted this application to an agent of the defendant for $43,000 worth of life insurance, on October 9, 1979. The policy was issued by the defendant to plaintiff's late husband on October 16, 1979. Although the record is silent on this subject, considering that the policy was issued only one week after the application was signed, it seems safe to presume that no physical examination was undergone by the insured as part of the application process for this policy. The insured was killed in an automobile accident on November 16, 1979.

As beneficiary, plaintiff made the usual claim under the policy for the proceeds. Inasmuch as the death obviously fell within the two-year contestability period of the policy, the defendant advised plaintiff that it was making a routine investigation into the health history of the insured and would be back in touch with her. It was during the course of this investigation that the defendant uncovered facts which caused it to make a determination that certain answers given by the insured on the insurance application were false.

With this additional information, the defendant took the position that the risk of loss had been increased, that the misrepresentations were material to the risk, and it denied the claim of the plaintiff. As a result of this denial, the plaintiff, as beneficiary, brought this suit, which was answered by the defendant. In addition, the defendant filed a motion for summary judgment, with supporting affidavits and trial memorandum.

From reading the record it is difficult to determine whether the court tried the case on the merits or on the motion for summary judgment. We are proceeding on the basis that the case was tried in a usual and regular manner, on the merits, and not on the summary judgment motion. After the hearing, the chancellor made certain findings. We quote in part from these findings:

> The record indicates the deceased answered all health questions in the application for insurance in the negative.

> The court finds, after a careful reading of the deposition of Dr. Blackburn, there would arise serious questions as to the truth or falsity of the answers. Many of the answers taken together with Dr. Blackburn's testimony could be subject to more than one interpretation. The court must take into account the deceased was not a man of medical training and to allow him the presumption that he endeavored to answer all questions truthfully.

> The court finds the answers together with the deposition of Dr. Blackburn as a matter of law did not materially increase the risk of loss for which such policy was issued and premium paid for its issuance.

## I. WERE THE INSURED'S ANSWERS CORRECT OR INCORRECT?

T.C.A. Section 56–7–103 provides as follows:

> 56–7–103. *Misrepresentation or warranty will not avoid policy—Exceptions.*—No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

From the case of *Little v. Washington National Insurance Company*, 34 Tenn.App. 593, 241 S.W.2d 838 (Tenn.App.1951) we quote as follows:

> Under this statute when it has been determined that the answers contained in the application were untrue, it becomes a question of law for the court as to whether such misrepresentations materially increase the risk of loss. Any misrepresentation which naturally and reasonably influences the judgment of the insuror in making the contract is a misrepresentation that "increases the risk of loss" within the meaning of the statute. (citing cases) 241 S.W.2d at 840.

The rule applies with special force where the policy involves the soundness of health of the applicant and is issued without a medical examination, as here. *De-Ford v. National Life, etc.*, 182 Tenn. 255, 185 S.W.2d 617. Another relevant consideration is the presence or absence, as the case may be, of direct inquiries as to specific diseases. *Knights of Pythias v. Cogbill*, 99 Tenn. 28, 41 S.W. 340. Inquiries with respect to a specific disease indicates that the insuror may regard it as material to the risk and it is the duty of the applicant to fully and frankly disclose the true condition as known to him. (citing cases) 241 S.W.2d at 841.

*Little* has been quoted with authority repeatedly, one of the most recent times being in the case of *Broyles v. Ford Life Insurance Co.*, 594 S.W.2d 691 (Tenn.1980).

The application signed by the plaintiff's decedent contained five questions, some with multiple parts, dealing with the matter of other life insurance and the health of the proposed insured. To all these questions the defendant requested an answer of "yes" or "no." The pertinent questions were as follows:

10. To the best of your knowledge do you have or have you ever had or been treated for:

a. Dizziness, fainting, convulsions, frequent headache, paralysis or stroke, mental or nervous disorder?

e. Recurrent indigestion, jaundice, ulcer, colitis, or other disorder of the stomach, intestines, liver or gallbladder?

i. Any other physical or mental disorder or loss of limb, or impairment of sight, hearing or speech?

11. Have you ever been treated or counselled or joined an organization because of alcohol or drug use? (If so, explain)

12. Have you consulted any doctor or been hospitalized in the past 5 years for any reason not previously explained? (If so, explain)

Plaintiff's decedent answered all of the above questions in the negative. Whether or not these answers were given with an intent to deceive or whether or not they were in fact false is a fact question to be determined by the trial court. Although, as already noted, the findings are unclear, obviously to hold a policy in full force and effect, the chancellor must have found that these answers were not false, but were correct. The scope of review in this Court is de novo, with a presumption that such findings are correct, and we can reverse on this issue only if we find that the evidence preponderates against the findings. Rule 13(d) T.R.A.P.

The key to the correctness or incorrectness of these answers is found in the evidentiary deposition of Dr. W. H. Blackburn, a general practitioner and surgeon in Benton County. Dr. Blackburn first began seeing plaintiff's husband in March, 1978.

Dr. Blackburn's deposition reveals the following about Mr. Johnson's health: On July 26, 1979, he treated Mr. Johnson for a spider bite. At that time Mr. Johnson complained of nerves. Dr. Blackburn discussed with him the possibility of his seeing a psychiatrist. He also prescribed a month's supply of Valium, 10 milligrams.

Dr. Blackburn saw Mr. Johnson again on July 31, 1979, at which time he was still complaining of nerves. There is a possibility that Valium was again prescribed, but Doctor Blackburn was uncertain. Again on September 7, 1979, Dr. Blackburn prescribed 100 Valium, 10 milligrams—a month's supply. On or about September 20, 1979, Mr. Johnson phoned Dr. Blackburn, asking for more Valium, which was refused. Dr. Blackburn saw Johnson the following day, when he again requested Valium and was again refused, as Dr. Blackburn felt that he was taking too many tranquilizers.

When Dr. Blackburn saw Johnson in October, 1979, he noted in his records, "mental problems" and "to mental health." He also prescribed another type of tranquilizer. Dr. Blackburn was of the opinion that Mr. Johnson was growing dependent on Valium. Dr. Blackburn testified that he did counsel Mr. Johnson concerning his taking Valium and other related drugs.

Dr. Blackburn further testified that he treated Mr. Johnson for duodenitis, an intestinal disorder, for which he was hospitalized for four days, in March, 1978. He treated him as an outpatient for his stomach disorder with medications until as late as July, 1978. Dr. Blackburn also hospitalized Johnson for one night in 1979, for spider bite.

■ The above evidence is the only evidence in the record pertaining to this issue. In the opinion of this Court, this evidence clearly preponderates against the finding of the chancellor below. As a matter of fact, in our opinion, it clearly preponderates in favor of the proposition that the answers given by the insured to these questions were false.

It may be conceded that some of these questions are not the most articulate attempts at eliciting information. In our opinion, insurance policy applications are necessarily open. To ask minute specific questions—more specific than the above—would require an exhaustive list, or an application designed for each individual. The questions, as posed, are designed to stir some discussion of the facts by the applicant. If he answers truthfully, the insurance company can then investigate to whatever extent they deem necessary. A case in point is *Gatlin v. World Service Life Insurance Co.*, 616 S.W.2d 606 (Tenn.1981). In this opinion, our Supreme Court held that a generally vague assertion in an application, such as "I hereby certify that I am in good health as of the effective date above," presents a question of fact for the trial court as to the truth of that assertion. In *Gatlin* no detailed questions were asked such as in the case under consideration.

Mr. Justice Fones quoted with approval the following language from the case of *National Old Line Insurance Co. v. People*, 256 Ark. 137, 506 S.W.2d 128 (Ark.1974).

It would appear to me that the company selling credit life insurance, in its application form, could follow the practice generally followed by insurance companies selling regular life insurance policies, and propound more specific questions... I

refer to such questions as whether one has been in the hospital any time during the last three years, consulted a physician within the last three years, ever been told he had high blood pressure, heart disease, diabetes, cancer, etc. On the basis of such answers, the company can intelligently determine whether to consider the man a good insurance risk. If answers are in the negative and are false, this fact should not be difficult to establish ...
616 S.W.2d at 610.

## II. DID THE MISREPRESENTATIONS MATERIALLY INCREASE THE RISK OF LOSS?

In accordance with the case law of this state, it now becomes the responsibility of this Court, having determined that the questions were answered falsely by the insured, to determine whether or not these misrepresentations or false answers materially increased the risk of loss so as to void the policy under T.C.A. Section 56–7–103. A case directly on point is that of *Broyles v. Ford Life Insurance Co.*, 594 S.W.2d 691 (Tenn.1980). In that case the insurance applicant signed an application stating that he was in "good health." As a matter of fact, Mr. Broyles had leukemia, and while he possibly was not aware of the fact that he had leukemia, he was aware of the fact that he had a blood disorder and that he was undergoing chemotherapy. The principal issue considered by the court in *Broyles* was whether the misrepresentation, which was found not to have been made with intent to deceive, increased the risk of loss to the insurer so as to void the policy. The Court stated:

Under T.C.A. § 56–1103, when it has been determined that the answers contained in the application are untrue, it becomes a question of law, not fact, for the court as to whether the misrepresentations materially increased the risk of loss. *Sloop v. Mutual of Omaha Ins. Co.*, 55 Tenn.App. 656, 404 S.W.2d 265 (1965); *Little v. Washington National Ins. Co.*, 34 Tenn.App. 593, 241 S.W.2d 838, 840 (1951). And, "(a)ny misrepresentation

which naturally and reasonably influences the judgment of the insurer in making the contract is a misrepresentation that 'increases the risk of loss' within the meaning of the statute." *Little v. Washington National Ins. Co., supra.* See also *Volunteer State Life Ins. Co. v. Richardson,* 146 Tenn. 589, 244 S.W. 44, 49 (1922) wherein it is pointed out that:

It is not to be left to the insurance company to say after a death has occurred that it would or would not have issued the policy had the answer been truly given. It is true the practice of an insurance company with respect to particular information may be looked to in determining whether it would have naturally and reasonably influenced the judgment of the insurer, but no sound principle of law would permit a determination of this question merely upon the say so of the company after the death has occurred. *The matter misrepresented must be of that character which the court can say would reasonably affect the insurer's judgment.* (emphasis added) 594 S.W.2d 693.

We are of the opinion that the misrepresentations involved in the case before us were of such a nature that would "naturally and reasonably affect the insurer's judgment," and therefore, increased the risk of loss to the insurer. It is not necessary to state or assume that the policy would not have been issued if the truth had been known. It is only necessary to determine that the misrepresentation was sufficient to deny the insurer information which they, in good faith, sought to discover, and which they must have deemed necessary to an honest appraisal of insurability.

Accordingly, we reverse the trial court and hold that defendant's insurance policy as of the time of the insured's death was void and of no effect. Costs in this Court are taxed to the plaintiff, for which execution may issue, if necessary.

NEARN, J., and RUSSELL, Special Judge, concur.