BROTHERHOOD OF RAILROAD TRAINMEN v. DANIELS.—
75 S. W. (2d) 1019.

Eastern Section. May 26, 1934.

Petition for Certiorari denied by Supreme Court, October 10, 1934.

Kennerly & Key, of Knoxville, for plaintiff in error.

S. E. Hodges and John F. Scott, both of Knoxville, for defendant in error.

PORTRUM, J. Mrs. Daniels instituted this suit to recover from the defendant, Brotherhood of Railroad Trainmen, the proceeds of a $5,000 beneficiary certificate issued by the defendant to her husband, U. G. Daniels, and in her declaration she alleges that the defendant is a voluntary organization, composed of the Grand Lodge, and subordinate lodges, one of which was located in Knox county, Tennessee, and that her husband was a member of the local lodge and obtained the class E beneficiary certificate insuring his life in the amount of $5,000, and in which she was named as the beneficiary. Daniels died in November, 1930, at which time all premiums and assessments were paid, and proof of death was furnished according to the terms of the certificate and the constitution and by-laws of the defendant, but that the defendant refused to pay the claim. The plaintiff, anticipating the defense, further alleged and quoted in the declaration from a provision in the Constitution, which provides: "If any untrue or incomplete answers shall be made in said application, then the certificate issued thereunder and said contract shall be absolutely null and void," and then alleged that the defendant, after receipt of proof of death, undertook to cancel the certificate by indorsing upon its face the following: "Beneficiary certificate cancelled this date, August 3, 1931, in accordance with Sections 59 and 140."

To the declaration the defendant filed numerous pleas,

but the defense is grounded upon a breach of a material warranty. It is conceded that the defendant is a fraternal benefit association or society, operating upon the assessments plan, and its liability or nonliability must be determined by the common law and Tennessee statutes particularly applicable to it, and not by statutes applicable to life insurance companies. Shannon's Code, sec. 3306.

We concur in this view and hold that the applicant's answers are warranties, since the policy designated the answers as warranties, and, if the answers are untrue, then the policy is avoided, provided the warranty proves to be a material warranty.

In the application before us the applicant warrants his answers to be true, and also warrants the warranty to be material. We are going to determine if the warranties be material, without reference to the legal effect of the warranty making immaterial warranties material.

A false answer, to be material, must suppress information of a disease which is permanent, habitual, and a constitutional ailment, indicating some vice in his constitution and having some bearing upon his general health and continuance of life. Rand v. Society, 97 Tenn. (13 Pickle), 291, 37 S. W., 7. And in the same case it is said, such serious illness as "rendered the risk unusually hazardous."

But applicant's omission to mention slight and temporary illness, when not specifically and directly inquired about, does not avoid the policy. Knights of Pythias v. Cogbill, 99 Tenn. (15 Pickle), 28, 41 S. W., 340; Woodward v. Insurance Company, 104 Tenn. (20 Pickle), 49, 56 S. W., 1020; Hale v. Sovereign Camp W. O. W., 143 Tenn., 555, 226 S. W., 1045, 1049.

However, applicant's failure to disclose severe attack of renal colic after application and before delivery of policy avoids the policy. Harris v. Insurance Company, 130 Tenn. (3 Thomp.), 325, 170 S. W., 474, 475, L. R. A. 1915C, 153, Ann. Cas. 1916B, 380.

"False statement as to whether applicant has consulted or been attended or treated by a physician within a stated time, if warranted to be material, or if, by express stipulation, it is made material, will defeat recovery on the contract, although the statement might otherwise be regarded as immaterial, and although there was no fraudulent intent on the part of the applicant in the absence of a statute modifying the strict rule as to warranties." 45 C. J., 84, sec. 73.

"The substance of these decisions is that, where the statement is one concerning the existence or nonexistence of a given fact, there can be no recovery if the matter be not truly stated, whether such failure to state with truth and correctness be the result of fraud or of innocent mistake; but that, if the statement be as to a matter

of opinion merely, a lack of accuracy will not cause a forfeiture of insurance, if such statement was made honestly and after the exercise of due diligence to learn the truth of the matter so represented." Blackman v. Casualty Company, 117 Tenn., 578, 103 S. W., 784, 785.

The materiality of the warranty is discussed in a note in 63 A. L. R., p. 847, where the rule in many jurisdictions, including Tennessee, is stated to be:

"In some cases the consultation with, or attendance by, a physician, contemplated by a general question in an application for life or accident insurance as to such consultation or attendance, is held to refer to a consultation or attendance for a serious or severe ailment, such as would affect the contract of insurance, and not to include such consultation or attendance for a slight, temporary, or immaterial illness."

With these rules of law in view, we will now state the facts.

The applicant was asked the following questions and made the following answers:

"Q. Are you in good health? A. Yes.

"Q. Have you consulted a physician during the past five years? A. Yes.

"Q. When and for what diseases or injuries? A. March 8, 1929, bruise, left hand. .

"Q. State present condition? A. Complete recovery, no sequilla.

"Q. Have you ever been afflicted with any of the following diseases: asthma, bronchitis, pneumonia, pleurisy, tuberculosis, influenza, spitting of blood, habitual cough or expectoration, shortness of breach, palpitation, or any diseases of the throat, heart or lungs? A. No.

"Q. Have you ever had any illness or injury other than as stated above? A. No."

The applicant was a brakeman regularly employed, and his time book shows that he was excused from work during the greater part of February, March, and up until September, when the application was made, and for three months beginning with April he did not work a day, but there is some evidence in the record from which the jury may have concluded that the reason he did not work was because he was lazy. Yet the testimony of the lay witnesses is undisputed to the effect that from the applicant's appearance he was taken to be a sick man.

During March he had an acute attack of pleurisy and an enlarged liver, which confined him to his bed at his home for a week, when he called in Dr. Schultz, who testified that he was a very sick man. The patient suffered severe pain from the pleurisy, and was given drugs to relieve it. The doctor detailed his treatment for the

pleurisy and the enlarged liver. Mrs. Daniels testified that Dr. Schultz assured her there was nothing much the matter with her husband, and she became dissatisfied with him and called in another doctor; that is, the witness, Dr. Evans. This doctor removed Mr. Daniels to his hospital, where he remained from one to two weeks; the witness not being sure whether he remained only one or two weeks. This witness testifies that the patient was a very sick man, and he treated him to relieve the severe pain in his chest. The wife testified that she remained at the hospital during all the time that her husband was there, with the exception that she returned to her home at nights.

The medical testimony shows that pleurisy and an enlargement of the liver are secondary diseases; that is, they are caused by a primary disease. They detail many primary diseases which may cause a secondary ailment; the most important causing pleurisy being tuberculosis and influenza. But it is shown that, if the patient recovers from the primary disease, he will recover from the secondary disease. The association's medical examiner found no evidence of an enlarged liver at the time he made the examination of the applicant, but he states a physical examination would not disclose a prior attack of pleurisy, and that the examiner must rely upon the statement of the applicant.

The applicant died in November, 1930, from an acute attack of diabetes, and it appears that this disease is disconnected, and in no way attributable to an attack of pleurisy or an enlarged liver, and that, while these are secondary diseases, diabetes is not a primary disease causing the secondary ailment. Therefore it is argued that, if the applicant breached his warranty, the breach is not material to the risk, since the insured died of an independent cause.

In support of this contention we are cited to an expression of the court in the case of Hale v. Sovereign Camp W. O. W., supra, found in this paragraph:

"As a matter of fact, the deceased contracted a bad cold at one period during the five years preceding and had an attack of asthma in connection with it and summoned a doctor. The doctor testified that this attack amounted to nothing and that deceased promptly recovered from it. The attack had no connection with the death of the deceased. He died from influenza during the epidemic of 1918."

But following this expression the court laid down this rule: " 'The mere omission of an applicant to mention a disease which does not, directly or indirectly, cause his death, can but be an immaterial matter in an action for the insurance. Such an omission does not affect the risk, and cannot be properly characterized as a fraudulent concealment. It is not every slight or temporary illness, and es-

pecially when not specifically injured about, that must be revealed. Only those attacks which have, in some degree, a detrimental influence upon the general health or constitution of the applicant are material to the risk, and therefore within the rule as to warranties. [Citing authorities.]' Knights of Pythias v. Cogbill, 99 Tenn., 28, 41 S. W., 340.''

Now the applicant had been asked if he had ever consulted a physician and replied in the affirmative, for an injured hand which had completely recovered, and he was asked to give the name of the physician, and replied, ''Dr. Jacob Schultz and Dr. W. K. Evans, both of Middlesboro, Kentucky.'' Dr. Evans treated the patient in his hospital as above detailed, but he had never treated him for an injured hand.

Dr. Schultz had treated him for his injured hand, either immediately before or after his attack of pleurisy. The applicant was able to recall this minor injury, and, after designating his doctors, stated he had suffered from no illness during the last five years. His answer to the question, ''When and for what diseases or injuries?'' was not complete. His answer that he had not been afflicted with pleurisy, or ''any diseases of the . . . lungs,'' was false. And he gave a false answer to this question: ''Have you ever had any illness or injury other than as stated above?''

 This information was suppressed either innocently or fraudulently, and there is no explanatory evidence adduced. If the disease be trifling in character, temporary, and will pass away, we think an inference arises from which the jury can find the suppression of the information innocent, and not fraudulent, but, if the ailment is of such a character as to indicate an impairment of the health of the applicant, then no such an inference can arise, and, the warranty being breached, the policy is avoided.

The fact that the applicant did not die of the ailment he had had, and suppressed, is not controlling, as the defendant in error insists is the case. For, if the attacks ''evidenced a material impairment of the applicant's constitution'' (Harris v. Insurance Co., supra), then the warranties were material warranties, and the contract was avoided at its inception.

''It cannot be that the matter misrepresented should necessarily relate to the hazard of loss by the death of the insured.'' Mutual Life Insurance Co. v. Dibrell, 137 Tenn., 528, 194 S. W., 581, 583, L. R. A. 1917E, 554.

Pleurisy and the enlargement of the liver are in a sense temporary diseases, but they are secondary diseases and point to the existence of other diseases, and the unexplained suppression of this information, when a direct inquiry had been made, justifies the conclusion that the warranties were material.

We are of the opinion the trial judge should have directed a verdict for the defendant. The assignment of error is sustained, and the verdict is here directed.

Snodgrass and Thompson, JJ., concur.