Buddy W. DAY

v.

**MUTUAL OF OMAHA INSURANCE COMPANY.**

Court of Appeals of Tennessee,
Eastern Section.

Oct. 23, 1975.

Certiorari Denied by Supreme Court
March 22, 1976.

Randall E. Nichols, Knoxville, for Buddy Day.

Ray Lee Jenkins, Knoxville, for Mutual of Omaha.

## OPINION

SANDERS, Judge.

This case involves a question of whether or not a policy of insurance for disability benefits is void because of failure of the insured to fully disclose his medical history, his correct monthly income and other insurance coverage in his application for insurance.

The Plaintiff, Buddy W. Day, filed suit against the Defendant, Mutual of Omaha Insurance Company, in the Law and Equity Court for Anderson County. The Complainant alleges that the Defendant issued a policy of insurance to the Plaintiff on August 17, 1972, providing for payments of $500.00 per month to the Plaintiff during his disability due to accident or illness. On September 1, 1972, the Plaintiff was involved in an accident resulting in his disability and the Defendant has refused to pay according to the provisions of the policy. Plaintiff also seeks to recover a bad-faith penalty.

The Defendant, for answer to the complaint, says that the Plaintiff made certain material misrepresentations of fact in his application for insurance; that the misrepresentations materially misled the underwriters of the Defendant and, had the true

facts been known, the policy would not have been issued.

The Defendant says (a) the Plaintiff failed to fully disclose his medical history and treating physician; (b) Plaintiff was suffering from a pre-existing psychotic neurosis and not from disabling injuries; (c) he had in existence other disability insurance which he failed to disclose; (d) he overstated his monthly income, resulting in his being overinsured. Also, by way of counter complaint, the Defendant seeks to have the contract of insurance rescinded.

The case was tried before The Honorable Roland Prince, Chancellor, who found that the Plaintiff should recover for three months' benefits under the policy, but his disability beyond that period of time was due to a condition which pre-existed the policy and his failure to disclose this condition in his application for insurance precluded his recovery. The Chancellor also disallowed the Plaintiff's claim for bad-faith penalty.

Both sides have appealed and assigned error.

The Plaintiff says that it was error for the Court to hold that his problems pre-existed the accident and his failure to disclose his condition precluded his recovery, and to deny the bad-faith penalty.

The Defendant says the Court erred in allowing any benefits under the policy after having held there was a material misrepresentation in the application for insurance.

The proof shows that the answers to the questions on the application for insurance were furnished by the Plaintiff to the insurance agent and the agent filled in the application. When the application was completed it was signed by the Plaintiff and became a part of the policy. The application asked a number of questions concerning specific types of illness from which the applicant may have suffered and requested an answer of "yes" or "no." To all these questions the Plaintiff answered "no." As pertinent here, the application also asked:

"2. Have you . . . ever had, or been advised by a physician that you had, or received advice or treatment for: (Circle conditions answered 'yes' and give details in 5. below.) . . . (d) Mental or nervous trouble, . . . ."

The answer of the Plaintiff to this question was "no."

"3. Have you . . . had or been told you had, or received advice or treatment within the past five years for: (a) any physical conditions or injuries not mentioned above, or (b) any symptoms of ill health? ___ (Give details in 5. below.)"

To this question the Plaintiff answered "no."

"4. Have you . . . had any physical examinations during the past year? ___ If 'yes,' give reason for examination, treatment provided, and diagnosis, if any, in 5. below."

To this question the Plaintiff also answered "no."

The proof shows the Plaintiff's answers to these questions to be false.

During the preceding five-year period the Plaintiff had been treated by Dr. Russell for a variety of complaints. Dr. Russell testified that he saw the Plaintiff on numerous occasions between 1969 and the date of the accident on September 1, 1972, which precipitated this litigation.

In describing the complaints of the Plaintiff and his diagnosis and treatment of the Plaintiff, Dr. Russell testified, in part, as follows:

"A. All right. June 17th, '69, he was having pain in his shoulder. The impression at that time was myositis, which could be muscle strain or inflammation of the muscle. It did subsequently respond to

treatment. December '69, sinusitis. December 23rd, '69 because he couldn't sleep at night. He was depressed, tense, having tension headaches. On October 12th, 1970, he complained of pain in his shoulder. The findings were negative at that time, but he responded to some conservative care of heat and analgesics. November the 9th, 1970, having multiple complaints of night sweats, coughing yellow, coughing blood, pain keeping him awake at night. His chest was sore, several complaints, and also having some indigestion. At this time I thought this was primarily psychosomatic pain. His workup at that time was negative. February of '71, he had an aphthosis ulcer, which is a minor irritation of the mouth and throat, as you probably know. April 22nd, '71, he had some mild bronchitis with multiple pains . . . shoulders painful, vomiting blood, thought his work was causing him to have so much pain. Said he had waited for me for two weeks and he finally came in having vomited some dark blood three days before and he was coughing and said he was congested and having indigestion and headaches. This time I suggested that he might see a psychiatrist and treated him symptomatically."

\*  \*  \*  \*  \*  \*

". . . May 25th, headaches and having pressure across his forehead and pain relievers didn't help and again he told us about the bleeding situation and a blood test again was run and it was negative. He was treated for sinusitis again in November of '71, and he had the flu in February of '72."

The proof shows that on September 1, 1972, while the Plaintiff was at the rear of an automobile with a "U-Haul" trailer attached, the automobile rolled backward and the Plaintiff was struck by the trailer.

■ We think the proof clearly establishes that the physical injuries Plaintiff received as a result of this accident were minimal and not disabling. However, the proof does show that the Plaintiff is disabled because of psychosomatic illness. There is a direct conflict in the medical testimony as to whether the Plaintiff was suffering from the psychosomatic illness prior to the accident or whether it was the result of the accident.

Dr. Russell testified that he examined the Plaintiff after the accident and found no disabling injuries. He released the Plaintiff to go back to work but the Plaintiff continued to complain of injuries which could not be substantiated by objective examination.

On November 3, 1972, Dr. Russell referred the Plaintiff to Dr. Wright, a psychiatrist. Dr. Russell testified that, in his opinion, the Plaintiff's psychosomatic illness was not the result of this accident, but had existed since 1969.

Dr. Wright testified, however, that, in his opinion, the Plaintiff's psychosomatic illness resulted from the accident and did not exist prior thereto.

At the conclusion of the testimony in the trial of the case, the Chancellor made a finding of fact that the Plaintiff's illness existed prior to the accident. The following colloquy occurred between Plaintiff's counsel and the Court:

"*MR. HEDGES:* Then, Your Honor, are you finding as an issue of fact that Mr. Day, prior to taking out this policy, making application, was aware of the fact that he had psychosomatic illness?

"*COURT:* This is exactly what I'm finding as a matter of fact, and I'm finding that based upon the testimony of Dr. Russell, specifically. That's exactly what I'm finding. And I'm finding secondly that failure to disclose, the fact that he had been to see Dr. Russell, so that this company could have, in turn, contacted him and raised the question with the doctor, 'What did you treat him for?' is a material matter upon which this company might well not

have insured this man, and I can certainly see why they would consider it to be material, and to that extent I don't think the recovery should be had. I don't think it would be right. I don't think it would be equitable or just in this case."

We concur with the Court's finding of fact.

In addition to the Plaintiff's falsification of his application for insurance as to his health he also falsified his application as to his monthly earnings and as to other insurance coverage.

In the application the Plaintiff stated that he had a monthly income of $1,200.00, but the proof shows that his income was approximately $500.00 per month.

The application asked what other insurance he had which would pay "monthly loss of time benefits." He failed to list any. The proof shows that he had two policies in force which would pay him $450.00 per month.

Mr. Charles Burke, who is the senior underwriter in the Southeast for the Defendant, testified as to the importance of knowing the correct income of an insured and the amount of additional insurance he may have. He testified that it was important not to overinsure a person; that his company limited the total insurance coverage to 75% of the insured's income to avoid making disability benefits more profitable than working.

The Plaintiff originally applied for $800.00 per month benefits, but after the Defendant Company received a report from the company it employed to make a routine check on the Plaintiff, it reduced the coverage to $500.00 per month.

Mr. Burke testified that had the Plaintiff disclosed on his application that he had other insurance which would pay him $450.00 per month, the Defendant would not have written the policy.

The proof shows that in the policy owner's report of disability, which was dated January 13, 1973, the Plaintiff stated that he did not have disability insurance with any other company when, in fact, he did have with two other companies.

■ This falsification has no bearing on the validity of the policy in question, but lends credence to the insistence of the Defendant that the misrepresentations by the Plaintiff were made with actual intent to deceive.

In the case of *Sloop v. Mutual of Omaha Insurance Company*, 55 Tenn.App. 656, 404 S.W.2d 265, 268, this court, speaking through Judge Cooper, quoted with approval:

" 'It is the duty of the insured when he signs an application or accepts the policy, if he knows or has any reason or ground to believe that he has any disease or is in unsound health, * * * [to] make a fair disclosure of the facts to the insurer. *Knights of Pythias v. Rosenfield [Rosenfeld]* 92 Tenn. 508, 22 S.W. [204] 504; *Harris v. [Security Mut. Life] Insurance Co.*, 130 Tenn. 325, 170 S.W. 474 [L.R.A. 1915C, 153].' *Norvill v. Mutual Benefit Health & Accident Ass'n*, 14 Tenn.App. 396; *Little v. Washington National Ins. Co.*, 34 Tenn.App. 593, 241 S.W.2d 838.

"However, '[n]o written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increase the risk of loss.' T.C.A. 56–1103.

"Under this statute, '[a]ny misrepresentation which naturally and reasonably influences the judgment of the insurer in making the contract is a misrepresentation that "increases the risk of loss" with-

in the meaning of the statute.' *Little v. Washington Nat. Ins. Co.*, supra. And when it has been determined that the answers contained in the application were untrue it becomes a question of law for the court as to whether such misrepresentations materially 'increase the risk of loss' within the meaning of the statute. *Little v. Washington National Ins. Co.*, supra; *Norvill v. Mutual Benefit Health & Accident Ass'n*, supra; *Standard Life Ins. Co. of the South v. Strong*, 19 Tenn. App. 404, 89 S.W.2d 367; *National Life & Acc. Ins. Co. v. Lewis*, 19 Tenn.App. 459, 89 S.W.2d 898."

We think the proof not only supports the fact that the misrepresentations increased the risk of loss but also that the misrepresentations were made with the intent to deceive the Defendant.

Plaintiff's assignments of error are overruled and the decree of the Chancellor in disallowing recovery for future benefits under the policy is affirmed.

This brings us to the Defendant's assignment of error running to the action of the court in allowing recovery under the policy for a period of three months.

In allowing a recovery for the three-month disability but disallowing additional benefits the Chancellor rationalized that the Plaintiff was disabled as a result of the September 1 accident for a period of three months and the misrepresentations in the application had no relationship to this injury. However, he found that the disability due to psychosomatic illness predated the accident and, for this reason, denied recovery.

Although there may be logic in the rationale of the Chancellor under a given set of facts, we don't think it is applicable in the case at bar.

It is not material to the validity of coverage whether the disability suffered by the insured was related to the misrepresentations. Regardless of what may cause the death or disability of the insured after the issuance of a voidable policy, it has no bearing on whether or not the policy is enforceable. If the policy is obtained through fraud or misrepresentation which materially "increases the risk of loss," it is voidable from its inception.

In the case of *Brotherhood of Railroad Trainmen v. Daniels*, 18 Tenn.App. 264, 75 S.W.2d 1019, the insured died from an illness other than the one he failed to disclose in his application for insurance. In passing upon the issue, the court said:

"The fact that the applicant did not die of the ailment he had had, and suppressed, is not controlling, as the defendant in error insists is the case. For, if the attacks 'evidenced a material impairment of the applicant's constitution' (*Harris v. Insurance Co.*, supra) then the warranties were material warranties, and the contract was avoided at its inception."

Also, in the case of *Mutual Life Ins. Co. v. Dibrell*, 137 Tenn. 528, 536, 194 S.W. 581, 583, the court, in addressing itself to this question, said:

"It cannot be that the matter misrepresented should necessarily relate to the hazard of loss by the death of the insured. Such a construction might prevent the company's rescinding the contract because of a misrepresentation that actually induced the contract, in an action begun promptly after the making of the application and the issuance of the policy. What will not avail to 'void the policy,' under the statute, it seems equally will not 'prevent its attaching,' as a contract. We cannot adopt the harsh and radical construction that the Legislature meant to deprive the insurer of the right to rescind the policy contract for inducing fraud."

The Defendant's assignment of error is sustained and the decree of the Chancellor in awarding the Plaintiff a judgment

for $1,500.00 is reversed and the complaint is dismissed.

The cost of this appeal, together with the cost in the Trial Court, is taxed to the Plaintiff.

PARROTT, P. J. (E.S.), and GODDARD, J., concur.