IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 13, 2018 Session

FILED
06/25/2018
Clerk of the
Appellate Courts

## GRADY EUGENE DUTTON v. TENNESSEE FARMERS MUTUAL INSURANCE COMPANY

**Appeal from the Circuit Court for Hawkins County**
**No. CC16CV277      Alex E. Pearson, Judge**

_____

### No. E2017-01322-COA-R9-CV

_____

We granted the Rule 9 application for an interlocutory appeal filed by Tennessee Farmers Mutual Insurance Company ("TN Farmers") to consider whether material misrepresentations made on an application for a policy of insurance may become not material by virtue of later changes made to the policy. We find and hold that the misrepresentations made on the policy application increased the risk of loss and voided the policy or prevented its attaching pursuant to Tenn. Code Ann. § 56-7-103 and that subsequent changes to a void policy did not render the misrepresentations not material. We, therefore, reverse the June 22, 2017 order of the Circuit Court for Hawkins County ("the Trial Court") denying TN Farmers' motion for summary judgment and remand this case to the Trial Court for entry of an order granting summary judgment to TN Farmers.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which FRANK G. CLEMENT, P.J.M.S. and THOMAS R. FRIERSON, II, J., joined.

Thomas L. Kilday, Greeneville, Tennessee, for the appellant, Tennessee Farmers Mutual Insurance Company.

Floyd W. Rhea, Sneedville, Tennessee, for the appellee, Grady Eugene Dutton.

# OPINION

## Background

Grady Eugene Dutton ("Plaintiff") sued TN Farmers with regard to a property insurance policy ("the Insurance Policy") insuring a house ("the House") located at 187 Little Pumpkin Valley Road in Edison, Tennessee ("the Property"). The House was destroyed by fire on May 28, 2016, and TN Farmers refused to pay the claim after it discovered that Plaintiff and his ex-wife Sheila Brock ("Brock") had made misrepresentations when answering questions on the application for the Insurance Policy.

Plaintiff, who was 73 years old at the time of the fire, has been married multiple times. He met Brock in 1994, and they were married in December of 1995 and divorced in 2002. Brock had drug problems, and on one occasion in 1998 Plaintiff placed Brock in drug rehabilitation for 30 days. After they divorced, Plaintiff and Brock reconciled and began living together again for a time. They later had another falling out, and Plaintiff moved to Missouri where he remarried, and then later divorced, his first wife. After that divorce, Plaintiff returned to Tennessee and reconciled with Brock.

On April 29, 2008, Brock was arrested on multiple drug charges, some of which were felony charges. Specifically, Brock was arrested on charges of felony possession of drug paraphernalia, possession of Schedule II drugs (cocaine) for resale, and possession of Schedule III and Schedule IV drugs. Plaintiff was living in Missouri at that time, but Brock told him about her arrests when they spoke on the telephone. Plaintiff returned to Tennessee around Christmas of 2008, and he and Brock began living together again.

The Property was acquired by deed dated March 10, 2009 with Brock listed as the sole grantee. Plaintiff testified that he does not know why the deed does not list him as a grantee as he and Brock purchased the Property together. A deed of trust dated approximately one month after the purchase of the Property listed both Brock's name and Plaintiff's name. Plaintiff testified that he and Brock purchased the Property for $130,000 and that the mortgage was for $55,000. He testified that he and Brock both contributed their own monies toward the remainder of the purchase price, and that he and Brock moved on to the Property as soon as they purchased it. On April 21, 2009, Plaintiff and Brock met with a TN Farmers' agent and executed an application to insure the Property.

On the application, Plaintiff and Brock answered 'no' to questions about whether they had ever been charged with, convicted of, or pled guilty to a felony and whether they had ever been charged with, convicted of, or pled guilty to arson, fraud, theft, or drug related crime. On the page containing these questions and answers and Plaintiff's and

2

Brock's signatures, the application also states: "I(We) understand that any misrepresentations or failure to answer questions truthfully, correctly and completely will void this insurance." Furthermore, the application for the Insurance Policy states that the applicants had a previous total fire loss of $10,000 in December of 2006. When questioned during deposition, Plaintiff could not remember this fire loss, but could remember being insured by TN Farmers and living with Brock in Sneedville, Tennessee at that time.

Additionally, the Insurance Policy contains the following language:

ACTS WHICH AUTOMATICALLY VOID THE POLICY

Concealment or Fraud

The policy shall be automatically void as to all **insureds** if any **insured**, whether before or after a loss or **occurrence**:

1. conceals or misrepresents any material fact or circumstance relating to this policy or loss;

Brock negotiated a plea and was convicted in August of 2009 of charges including felony drug charges. Plaintiff testified that he could not recall if he and Brock were living together at the time that she was convicted. He stated: "she's had quite a history, and it's so hard for me to remember everything that she - - she was involved in shoplifting and stuff like that as well."

A Quit Claim Deed dated June 23, 2010 states that Brock was incarcerated in the Tennessee Department of Corrections and that Plaintiff held her Power of Attorney. Plaintiff executed this deed on Brock's behalf using a Power of Attorney. The deed conveyed to Plaintiff a life estate in the Property with a remainder interest to Catherine Dawn Sexton ("Sexton"), Brock's daughter. Plaintiff is not Sexton's father, but he claims to have a "[v]ery good. . . . Very close" relationship with Sexton. Plaintiff testified that this deed was prepared and executed because Brock was in jail and a credit card company had a judgment lien against her. Plaintiff testified that he settled the debt with the credit card company and had the judgment lien released. Plaintiff recorded the deed, but never recorded the Power of Attorney. He produced a copy of the Power of Attorney as an exhibit to his deposition. The Power of Attorney is signed by Brock and witnessed and notarized, but a space for Plaintiff's signature on this document is blank.

Another Quit Claim Deed dated September 9, 2014 deeded the Property from Sexton to Plaintiff. Plaintiff testified that this deed was executed because he gave Brock

property on Marie's Lane in exchange for her interest in the Property. He further stated that he actually gave the property on Marie's Lane to Sexton, but it was for Brock. He then further explained that the transaction was even more complicated because Plaintiff traded property he owned at Big Springs Road to another man for the property at Marie's Lane by Plaintiff giving the Big Springs Road property to the man's son and having the man give the Marie's Lane property to Sexton. Plaintiff testified all of this was to "release [Brock] from any and all ownerships of [the Property], her and Catherine [Sexton] both."

On January 7, 2014, Plaintiff requested that TN Farmers take Brock off of the Insurance Policy because he "was breaking relationships with her, and we were doing this deed swap thing and everything at the time." Plaintiff requested that Sexton be added as an insured at that time. Plaintiff testified that Sexton's interest in the Insurance Policy was deleted in September of 2014.

Another Quit Claim Deed dated May 14, 2015 deeded the Property from Plaintiff to Jeanette Mikel Johnson ("Johnson"), Plaintiff's daughter. Plaintiff testified he executed this deed for tax purposes. He stated: "It was nothing special. It was just that she has my Power of Attorney and everything. Whenever I die, she has my soul, and I thought it would be simpler to transfer the properties over to her for tax purposes, but then after a little consideration, I thought it might be best to bring it back to my name."

Plaintiff testified that Johnson lives in Missouri and has not been back to this area since he deeded the Property to her. So Plaintiff mailed Johnson a deed, which is dated November 15, 2015 and purports to deed the Property back to Plaintiff. Johnson signed the deed and mailed it back to Plaintiff. Johnson's signature on the deed, however, was not notarized, and Plaintiff never recorded this deed. Plaintiff seemed to think the deed had to be notarized before it was recorded, and he testified that he was waiting for Johnson to come to Tennessee so they could have the deed notarized. Plaintiff gave a copy of the November 15, 2015 deed to the investigators when they were conducting the fire investigation on the Property.

The House was destroyed by fire on May 28, 2016. Plaintiff was asked who he believed had an interest in the Property at the time of the fire, and he stated: "I owned the house and property. According to this being registered, Janette [sic] Mikel would have been the owner of the property. . . . Sheila Brock is not a party to this."

At the time of the fire, Plaintiff and his 38 year old girlfriend were living in the House, but were on vacation in Missouri for Plaintiff's daughter's wedding. Plaintiff testified that he has lived in the House continuously from the time Brock purchased the Property in April of 2009 through the time of the fire. Plaintiff's current girlfriend

4

moved in a few months before the fire. Brock had last lived in the House in 2014. Plaintiff stated that Brock moved out because "the drug situation, it was unbearable, and I couldn't take it anymore."

Plaintiff testified that while he and his girlfriend were in Missouri, Brock was driving Plaintiff's truck, which he had loaned to her. On the weekend of the fire, Brock, who knew the combination to the gate lock on the Property, returned Plaintiff's truck to the Property with Plaintiff's permission. Plaintiff testified that he and Brock spoke on the telephone, and she requested permission to go into the House to take a shower. Plaintiff denied Brock permission to enter the House. Brock then entered the House through an unlocked window and got some water jugs from the House. Plaintiff testified that Brock later told him she had done this.

Plaintiff denied having anything to do with the fire. When asked if it had occurred to him that Brock had something to do with the fire, he stated: "Oh, absolutely. . . . I don't know that she would, but like you said, it's possible that she could have, but I don't know, and we don't have no reason why she would. So I don't know." He was asked if he thought Brock started the fire, and he stated: "I don't know. I honestly don't know. I can't point a finger at something I don't know, and I don't think you could either." Plaintiff testified that a baseboard heater in the bathroom may have started the fire because he thought the thermostat "might have been defective or something . . . ."

Plaintiff currently is living on the Property in his RV. He also has a single-wide trailer on the Property, but is not staying there. The last person to use the single-wide trailer was Plaintiff's cousin, who recently got out of jail. The cousin was in jail for trying to shoot Brock. Plaintiff testified that no one is staying in the single-wide trailer at this time.

TN Farmers filed a motion for summary judgment alleging that the material misrepresentations made by Plaintiff and Brock on the Insurance Policy application increased the risk of loss causing the policy to be void. In response to the motion for summary judgment, Plaintiff filed his own affidavit, but failed to respond to TN Farmers' statement of undisputed material facts. After a hearing, the Trial Court entered its order denying TN Farmers' motion for summary judgment after finding and holding, *inter alia*:

> The misrepresentations made on their application by Grady Dutton and Sheila Brock regarding Sheila Brock's criminal record are not material misrepresentations pursuant to the requirements of T.C.A. 56-7-103 because the defendant insurer, for purposes of its present Motion, has not asserted that the misrepresentations were made with the intent to deceive and the misrepresented facts did not increase the risk of loss to the

defendant insurer because the insurance contract was renewed several times during the seven-year period from the date of application until the fire, during which time Sheila Brock was deleted from coverage and Sheila Brock's daughter, Catherine Sexton, was first added, then deleted from the coverage, thereby changing the contract.

The Trial Court then granted TN Farmers permission to file for interlocutory appeal. We granted the Rule 9 application by order entered September 5, 2017.

## Discussion

We granted this Rule 9 application to consider the sole issue, as stated by the Trial Court:

[W]hether an insurance application misrepresentation may become <u>not</u> material, i.e., not increase the risk of loss to the insurer pursuant to the provisions of T.C.A. 56-7-103, after the passage of time from the application misrepresentation until the date of loss by reason of successive renewals of the policy and other intervening changes in the policy coverage by reason of persons being deleted and added as insureds.

As pertinent to this appeal, Tenn. Code Ann. § 56-7-103 provides:

**56-7-103. Misrepresentation or warranty will not void policy – Exceptions.**

No written or oral misrepresentation or warranty made in the negotiations of a contract or policy of insurance, or in the application for contract or policy of insurance, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless the misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

Tenn. Code Ann. § 56-7-103 (2016).

In *Freeze v. Tennessee Farmers Mut. Ins. Co.* this Court discussed the material misrepresentations made on insurance policy applications and explained how pursuant to Tenn. Code Ann. § 56-7-103 such misrepresentations may render the policy void. *Freeze v. Tennessee Farmers Mutual Ins. Co.*, 527 S.W.3d 227 (Tenn. Ct. App. 2017). As we noted in *Freeze*: "[D]etermining whether a particular misrepresentation increases an insurance company's risk of loss is a question of law for the court." *Freeze*, 527 S.W.3d

6

at 232 (quoting *Smith v. Tennessee Farmers Life Reassurance Co.*, 210 S.W.3d 584, 589 (Tenn. Ct. App. 2006)).

It is well settled in Tennessee that regardless of what caused the loss, "[i]f the policy is obtained through fraud or misrepresentation which materially 'increases the risk of loss,' it is voidable from its inception." *Day v. Mut. of Omaha Ins. Co.*, 534 S.W.2d 859, 864 (Tenn. Ct. App. 1975); *see also, e.g., Volunteer State Life Ins. Co. v. Richardson*, 244 S.W. 44, 49 (Tenn. 1922) (holding that insurance company was entitled to have policy canceled due to misrepresentations and stating: "Of course, the matter represented in the *Dibrell* Case did not enter into the death of the insured as a contributing cause, either directly or indirectly but it was, nevertheless, material and increased the risk of loss within the meaning of our statute, for the reason that it was information which would naturally and reasonably have influenced the judgment of the insurer with respect to the application. The principle is just as applicable to the situation presented here as in that case . . . ."); *Montgomery v. Reserve Life Ins.*, 585 S.W.2d. 620, 622 (Tenn. Ct. App. 1979) (stating: "No recovery will be allowed on a policy issued in reliance on a misrepresentation in the application which increased the risk of loss. . . . It matters not what caused the death of the insured.").

In *Day*, this Court further elucidated:

It is not material to the validity of coverage whether the disability suffered by the insured was related to the misrepresentations. Regardless of what may cause the death or disability of the insured after the issuance of a voidable policy, it has no bearing on whether or not the policy is enforceable. If the policy is obtained through fraud or misrepresentation which materially "increases the risk of loss," it is voidable from its inception.

In the case of *Brotherhood of Railroad Trainmen v. Daniels*, 18 Tenn. App. 264, 75 S.W.2d 1019, the insured died from an illness other than the one he failed to disclose in his application for insurance. In passing upon the issue, the court said:

"The fact that the applicant did not die of the ailment he had had, and suppressed, is not controlling, as the defendant in error insists is the case. For, if the attacks 'evidenced a material impairment of the applicant's constitution' (*Harris v. Insurance Co.*, supra) then the warranties were material warranties, and the contract was avoided at its inception."

7

Also, in the case of *Mutual Life Ins. Co. v. Dibrell*, 137 Tenn. 528, 536, 194 S.W. 581, 583, the court, in addressing itself to this question, said:

> "It cannot be that the matter misrepresented should necessarily relate to the hazard of loss by the death of the insured. Such a construction might prevent the company's rescinding the contract because of a misrepresentation that actually induced the contract, in an action begun promptly after the making of the application and the issuance of the policy. What will not avail to 'void the policy,' under the statute, it seems equally will not 'prevent its attaching,' as a contract. We cannot adopt the harsh and radical construction that the Legislature meant to deprive the insurer of the right to rescind the policy contract for inducing fraud."

*Day*, 534 S.W.2d at 864.

In the case now before us the Trial Court found that Plaintiff and Brock made misrepresentations on the application for the Insurance Policy. There is no question that these misrepresentations were material when made. *See Freeze*, 527 S.W.3d 227 (holding that similar misrepresentations were material and rendered the policy at issue void). In his brief on appeal, Plaintiff concedes that he "does not rebut the trial court's finding that a misrepresentation was made, and that drug use would affect the insurer's decision to extend coverage."

Plaintiff argues, however, that the later changes made to the Insurance Policy by successive renewals and the deletions and additions of insured persons render the misrepresentations made by Plaintiff and Brock not material as they no longer would increase the risk of loss. Specifically, Plaintiff asserts that Brock has been removed from the Policy and no longer has an ownership interest in the Property and that TN Farmers recorded these changes and accepted them through multiple renewals of the Insurance Policy. Plaintiff asserts that the "deletions, transfers" and the fact that Brock no longer lives on the Property create a "distance" between Brock and the Property, and therefore, the misrepresentations no longer have a bearing on risk.

We find Plaintiff's arguments unavailing. There is no question that Plaintiff and Brock made misrepresentations on the Insurance Policy application and that those misrepresentations were material and would increase the risk of loss. As such, the Insurance Policy was defeated, voided, or prevented from attaching at its inception pursuant both to the plain, clear, and unambiguous language of Tenn. Code Ann. § 56-7-

8

103 and the Insurance Policy itself. Given the fact that the Insurance Policy was void from its inception, the attempted changes to the Insurance Policy by virtue of renewals and changes to the named insureds that Plaintiff relies upon in this case were of no effect.

With regard to renewals of insurance policies, this Court has stated:

> When an insurance policy renewal is made, unless otherwise provided and called to the attention of the insured, the terms of the original policy become a part of the renewal contract of insurance. See 13A Appleman, *Insurance Law and Practice*, § 7648; 17 *Couch on Insurance* 2nd, §§ 64:40, 68:61. When renewing an insurance policy, the insurer must call attention to any changes in the terms and, if it fails to do so, such change is no part of the contract. Where the parties to a contract of insurance agree to a renewal, it is presumed that the same terms, conditions, premiums and subject matter obtain in the new contract as in the old. 13A Appleman, *supra*, § 7648. "An accurate definition of renewal cannot be made until it is first determined whether the renewal takes effect as an extension or continuation of the original policy or whether it represents the formation of a new although identical contract of insurance." 17 *Couch on Insurance* 2nd, § 68:2 at 659. Whether a renewal insurance policy is a new and independent contract or whether it is an extension or continuation of the original contract depends primarily upon the intention of the parties as ascertained from the instrument itself. *Lewis v. Western Assur. Co.*, 175 Tenn. 37, 130 S.W.2d 982 (1939); 17 *Couch, supra*, § 68:39.

*Brewer v. Vanguard Ins. Co.*, 614 S.W.2d 360, 363 (Tenn. Ct. App. 1980).

The record on appeal reveals that the renewals of the Insurance Policy were intended to extend or continue the term of the Insurance Policy, not to form a whole new and independent contractual agreement.[1] Given this, the renewals in the case now before us were dependent upon the original Insurance Policy, which, as discussed above, was void from its inception due to the material misrepresentations which increased the risk of loss made by Plaintiff and Brock on the application for the Insurance Policy.

---

[1] It is not the role of this Court "to make a different contract than that executed by the parties." *Posner v. Posner*, No. 02A01-9710-CV-00249, 1997 WL 796216, at *2–3 (Tenn. Ct. App. Dec. 30, 1997), *no appl. perm. appeal filed. See also, e.g., Central Drug Store v. Adams*, 184 Tenn. 541, 201 S.W.2d 682 (1947). "In the absence of fraud or mistake, a contract must be interpreted and enforced as written even though it contains terms which may be thought to be harsh or unjust." *Tenpenny v. Tenpenny*, No. 01A01-9406-CV-00296, 1995 WL 70571, at *6 (Tenn. Ct. App. Feb. 22, 1995), *appl. perm. appeal denied July 3, 1995*.

Additionally, in its brief on appeal, TN Farmers points us to cases from Georgia and Illinois wherein appellate courts in those states rejected arguments similar to the ones made by Plaintiff in this case and found that renewals to insurance policies made prior to the insurer's discovery of misrepresentations did not cure the misrepresentations or destroy the insurer's right to defeat or avoid the policy. *Lively v. Southern Heritage Ins. Co.*, 568 S.E.2d 98, 102 (Ga. App. 2002) (stating: "The Livelys also assert that Southern Heritage's renewal of the insurance policy corrected the misrepresentations contained in the application. We find no merit in this argument." [In part, because] "[t]he parties apparently continued to rely upon the application submitted [initially] for the renewal."); *American Country Ins. Co. v. Mahoney*, 560 N.E.2d 1035, 1043 (Ill. App. 1990) (stating: "Finally, we reject Mahoney's argument that American's decision to renew her insurance policy, well before it learned of her misrepresentations, eliminated any right to defeat or avoid the policy. Mahoney has not cited authority, and our own research had disclosed no authority, that supports this novel claim. And the text of [the Illinois statute] imposes no time limitation on the right, which it grants the insurer, to defeat or avoid a policy; that is, [the Illiniois statute] does not prohibit an insurer from seeking to defeat or avoid a policy . . . after it decides to renew a policy, in ignorance of the insured's material misrepresentations. Mahoney's application itself clearly provided that American would rely upon the misrepresentations therein when considering whether to renew her policy.").

We find the reasoning employed in *Liveley* and *Mahoney* to be persuasive. We note that as was the case with the Illinois statute in *Mahoney*, our statute, Tenn. Code Ann. § 56-7-103, also contains no time limitation within which an insurer who is ignorant of an insured's misrepresentations must take steps to avoid or defeat the policy. The decision whether to include such a time limitation in the statute was a policy decision made by our General Assembly.

Given all of the above, we hold that the material misrepresentations made by Plaintiff and Brock on the Insurance Policy application rendered the Insurance Policy void or prevented its attaching from its inception and that the subsequent renewals and attempted additions and deletions of named insureds did not operate to render the misrepresentations not material. We, therefore, reverse the Trial Court's June 22, 2017 order denying TN Farmer's motion for summary judgment and remand this case to the Trial Court for entry of an order granting summary judgment to TN Farmers.

## Conclusion

The judgment of the Trial Court denying summary judgment to TN Farmers is reversed, and this cause is remanded to the Trial Court for entry of an order granting

summary judgment to TN Farmers and for collection of the costs below. The costs on appeal are assessed against the appellee, Grady Eugene Dutton.


_____
D. MICHAEL SWINEY, CHIEF JUDGE