HARRY S. MATTICE, JR., UNITED STATES DISTRICT JUDGE
This matter is before the Court on the Motion for Summary Judgment (Doc. 49) filed by Plaintiff U.S. Specialty Insurance Company ("USSIC"). The Court having carefully considered the submissions of the parties, the entire record, and the applicable law, finds that the Motion for Summary Judgment should be GRANTED .
I. BACKGROUND
On or about March 27, 2015, Plaintiff USSIC issued an insurance policy to Defendant Clinton J. Payne to insure a 1967 Mooney M20C aircraft. (Doc. 17-2 at 1; 5). Within the policy application, Defendant Payne affirmed that he had 3,000 total aircraft pilot hours and fifteen (15) pilot hours in the model aircraft sought to be covered. (Doc. 17-3 at 1). According to Plaintiff, it relied on these representations when issuing the policy. (Doc. 17 at 3).
During the application process, Defendants allege that Payne had several conversations with various insurance agents in which he expressed confusion with some of the questions, including the questions about pilot hours, and that the final application was a product of those conversations. (Docs. 53, 54, 55, 59).
On April 18, 2015, Defendant Payne attempted to take off in the insured aircraft at the Winchester Municipal Airport in Winchester, Tennessee. Plaintiff states that Defendant Payne allowed five individuals on the aircraft, even though there were only four seats in the plane. Plaintiff asserts that due to the excess passenger and improper weight distribution, the aircraft crashed almost immediately upon takeoff. (Id. ). The record reflects that Defendants Michael Lombard, Adam Miller, Elizabeth Miller, and Desarae Thomas were the four passengers on the insured aircraft at the time of the crash. (Id. ). The record further reflects that these Defendants have filed separate tort actions in Franklin County Circuit Court, alleging negligence claims against Defendant *858 Payne. (Id. ). It appears that those actions remain pending at this time. The record does not reflect that Plaintiff is a named party in those proceedings.
The other remaining Defendant, Citizens Bank Corp., Inc., possesses a security interest in the aircraft that is the subject of the policy. (Doc. 17 at 4). To date, Citizens Bank has yet to enter an appearance, despite being served with service of process. (Doc. 23). On September 21, 2016, Plaintiff moved for a judgment of default against Citizens Bank, which the Court denied with leave to refile for the reasons set forth in its previous Order. (Doc. 34).
After the accident, Defendant Payne submitted a claim to Plaintiff, seeking coverage under the policy for the liability claims asserted by the other Defendants. (Doc. 17-4). Plaintiff immediately began investigating the claim, and discovered that Payne's actual total pilot flight time was 80.1 hours at the time of the accident, and his pilot flight time in the insured aircraft was 3.3 hours. (Docs. 17 at 5; 49-2 at 5). Defendants do not dispute that these are Payne's actual credentials.
On June 13, 2016, Plaintiff filed this declaratory judgment action. (Doc. 1). It later filed an Amended Complaint on June 30, 2016. (Doc. 17). Plaintiff filed the instant motion on September 5, 2017, asserting that Defendant Payne's responses in his policy application constitute material misrepresentations sufficient to void the policy from its inception. On this basis, Plaintiff argues that it has neither the duty to defend nor indemnify Defendants in the underlying state court action. (Docs. 49, 51). Thereafter, Defendants filed separate Responses, (Docs. 52, 54, 55, 57), and Plaintiff filed two separate Replies (Docs. 56, 58). Upon review, the Court finds that the issues in this case have been fully briefed and are ready for disposition.
II. STANDARD
Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp. , 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ; Nat'l Satellite Sports, Inc. v. Eliadis Inc. , 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. Celotex Corp. v. Catrett , 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case."
*859 Id. at 325, 106 S.Ct. 2548. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its ... pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." Moldowan v. City of Warren , 578 F.3d 351, 374 (6th Cir. 2009) (citing Matsushita , 475 U.S. at 586, 106 S.Ct. 1348 ; Fed. R. Civ. P. 56 ). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. Anderson , 477 U.S. at 248-49, 106 S.Ct. 2505 (citing First Nat'l Bank of Ariz. v. Cities Serv. Co. , 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968) ); see also White v. Wyndham Vacation Ownership, Inc. , 617 F.3d 472, 475-76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. Anderson , 477 U.S. at 252, 106 S.Ct. 2505 ; Moldowan , 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. Celotex , 477 U.S. at 323, 106 S.Ct. 2548.
III. ANALYSIS
A. Jurisdiction
The Declaratory Judgment Act does not provide an independent basis of jurisdiction, thus, a court can only hear a declaratory judgment action when it is founded upon an independent ground of jurisdiction. Skelly Oil Co. v. Phillips Petroleum Co. , 339 U.S. 667, 671-72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Here, the case lies under diversity jurisdiction because complete diversity exists between the parties and the amount in controversy exceeds $75,000.00. (Doc. 1 at 1-4); 28 U.S.C. 1332(a).
B. Declaratory Judgment Act
The Declaratory Judgement Act provides courts with "unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co. , 515 U.S. 277, 286-87, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). District courts, however, are not permitted to exercise this discretion blindly. Western World Inc. Co. v. Hoey , 773 F.3d 755, 759 (6th Cir. 2014). Rather, courts must use sound discretion that is "hardened by experience into rule." Id. (quoting Wilton , 515 U.S. at 289, 115 S.Ct. 2137 ). The Sixth Circuit has identified five non-exclusive factors for courts to consider when deciding whether to hear a declaratory judgment action. Id. The factors-known as the Grand Trunk factors[1] -are as follows:
(1) Whether the declaratory action would settle the controversy;
(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"
(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; [which is determined by asking]
a. whether the underlying factual issues are important to an informed resolution of the case;
b. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
c. whether there is a close nexus between underlying factual and legal issues *860 and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action; and
(5) whether there is an alternative remedy which is better or more effective.
Western World , 773 F.3d at 759.
Ultimately, the Grand Trunk factors are concerned with three things: efficiency, fairness, and federalism. Id. Before addressing the factors, the Court notes the parties have not objected to the use of a declaratory judgment action in this venue; that is to say, all parties consent to the current form of this action. This fact is noted because it is relevant, but not determinative. Id. (holding discretion should not be controlled by the parties' wishes).
Turning to the first and second Grand Trunk factors, the Court finds that both support exercising jurisdiction. While the instant declaratory judgment action may not end the dispute between the Defendants in the underlying state court actions, it would certainly settle the controversy as to whether Plaintiff has a duty to Defendant Payne in the underlying state court actions or indemnify the other Defendants for their injuries. As stated by the Sixth Circuit in Scottsdale Ins. Co. v. Flowers , "[A] prompt declaration of policy coverage would surely serve a useful purpose in clarifying the legal relations at issue." Scottsdale Ins. Co. v. Flowers , 513 F.3d 546, 555 (6th Cir. 2008) (internal quotations omitted).
As to the third Grand Trunk factor, the declaratory remedy sought by Plaintiff is not being used for "procedural fencing" or to help win a "race for res judicata." Western World , 773 F.3d at 759. It appears that Plaintiff only filed this action after discovering Defendant Payne's alleged misrepresentations and the possibility he had no claim for coverage or defense. (Doc. 17 at 4-5). In the event Plaintiff has no duty to indemnify Defendants or to defend Payne in the state court actions, "then it should not be forced to participate in th[ose] action[s]." Northland Ins. Co. v. Stewart Title Guaranty Co. , 327 F.3d 448, 454 (6th Cir. 2003). As set forth above, it does not appear that Plaintiff is a party to the state court actions, in which the other Defendants allege claims of negligence against Defendant Payne. Thus, Plaintiff would not be bound by the state court's determination in that action.
In determining whether the fourth Grand Truck factor weighs for or against exercising jurisdiction, courts generally look to three factors: (1) "whether the underlying factual issues are important to an informed resolution of the case;" (2) "whether the state trial court is in a better position to evaluate those factual issues than is the federal court;" and (3) "whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." Western World , 773 F.3d at 759. Again, it does not appear that Plaintiff is a party to the state court actions, and the parties' claims in those cases concern allegations of negligence as opposed to the issue of insurance coverage or the duty to defend. Therefore, a judgment on these issues by this Court would not offend principles of comity. Moreover, this Court is competent to determine whether Plaintiff is obliged to indemnify and defend Payne and the other Defendants, and it is unnecessary for this decision to be postponed until resolution of the fact issues in the state court lawsuits. Finally, while the resolution of this matter is dependent upon state and not federal law, there is no indication that a Tennessee *861 state law or policy would be frustrated by this Court's exercise of jurisdiction. There is likewise no indication that this Court's exercise of jurisdiction would create friction between the state and federal court systems.
As to the final Grand Trunk factor, the Court notes that Plaintiff could have filed a declaratory action pursuant to Tennessee Code Annotated §§ 29-14-101 et seq. , in Tennessee state court, or even intervened in the pending negligence actions filed by Defendants. However, as stated by the Sixth Circuit in Northland , "[plaintiff] chose for reasons of its own to have its dispute settled in federal court rather than state court," and that proceeding in state court "would not necessarily have provided a better or more effective remedy." Northland , 327 F.3d at 454. In any event, the majority of the Grand Trunk factors tend to weigh in favor of this Court's jurisdiction.
For the reasons set forth above, the Court finds that exercising jurisdiction would be fair, lead to an efficient resolution of the case, and not violate principles of federalism. Accordingly, the Court, in its discretion, will exercise jurisdiction over this declaratory judgment action.
C. Choice of Substantive Law
Federal courts sitting in diversity cases apply the choice-of-law principles of the forum state. Klaxon Co. v. Stentor Elec. Mfg. , 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Tennessee law, insurance policies and contracts are governed by the substantive law of the state where the policy was issued and delivered. Ohio Cas. Ins. Co. v. Travelers Indem. Co. , 493 S.W.2d 465, 467 (Tenn. 1973). In this case, Plaintiff issued the policy in Tennessee, and the parties executed the underlying contract in Tennessee as well. For this reason, Tennessee substantive law applies to the claim at issue.
D. The Parties' Rights and Obligations Under the Policy
In its Motion for Summary Judgment, Plaintiff argues that Defendant Payne's misrepresentations regarding his total pilot flight hours and model flight hours render the policy void ab initio. Pursuant to Tenn. Code Ann. § 56-7-103, an insurance company may deny a claim for benefits in two circumstances: (1) if the insured made intentional misrepresentations on the application for insurance; or (2) if the insured made misrepresentations that increased the insurer's risk of loss. Smith v. Tenn. Farmers Life Reassurance Co. , 210 S.W.3d 584, 589 (Tenn. Ct. App. 2006). The issue presented in this case concerns the second prong of the statute. The Tennessee Supreme Court has held that under § 56-7-103, the element of "misrepresentation" is "distinct" from the element of "increased in the risk of loss." Gatlin v. World Service Life Ins. Co., 616 S.W.2d 606, 608 (Tenn. 1981). Thus, the Court must first determine whether Defendant Payne made a misrepresentation, and second, whether that misrepresentation increased Plaintiff's risk of loss. The burden of proof is on Plaintiff to establish the elements of its claims by a preponderance of the evidence. See Royal Surplus Lines Ins. Co. v. Sofamor Danek Group, Inc. , 303 F. Supp. 2d 897, 914 (W.D. Tenn. 2003) (citing Hendrix v. Ins. Co. of North America , 675 S.W.2d 476 (Tenn. Ct. App. 1984) ).
1. Whether There Was a Misrepresentation
The insurance policy application form at issue consists of two pages. (Doc. 17-3). One section is devoted to describing *862 the "Approved Pilot" for the airplane. (Id. at 1). This section has several prompts, including age, certification, rating, and most importantly, "Total Logged Pilot hours." (Id. ). The Total Logged Pilot hours section required Defendant Payne to provide his hours for: (1) Total All Aircraft; (2) RG (retractable gear); (3) Model; and (4) Last Twelve Months. (Id. ). As outlined above, Plaintiff represented that he had 3,000 total aircraft hours, 15 RG hours, and 15 model hours. (Id. ). Plaintiff's post-accident investigation revealed, however, and Defendant Payne's deposition testimony confirmed, that he actually had 80.1 total aircraft hours and 3.3 model hours. (Doc. 49-2 at 5; 20-21; 23). On the second page of the application, Defendant Payne's signature appears beneath the statement, "We represent that each and all of the above answers are true and complete." (Doc. 17-3 at 2).
In its Motion for Summary Judgment, Plaintiff argues that the incorrect information Payne provided regarding his pilot experience constitutes a misrepresentation that increased its risk of loss, even if the misrepresentation was inadvertent. (Doc. 49-1).
In their Responses, Defendants essentially argue that Payne did not actually make a misrepresentation, and that he simply provided his best answer to a vague inquiry. Specifically, Defendants Payne and Thomas argue that the application question regarding "Total All Aircraft" hours was ambiguous, and that Payne reasonably thought Plaintiff sought the total number of hours he had been on an airplane, whether as a pilot or passenger. (Docs. 53, 54). Apparently, Defendant Payne is a former Tech Sergeant in the United States Air Force, and his duties involved serving as a Load Master on C-5 and C-130 aircraft. (Doc. 49-2 at 15-16). Payne's duties in the Air Force did not include piloting aircraft, nor did he receive any pilot training during the course of his service. (Id. at 17).
At his deposition, Defendant Payne testified as to the application process and explained why he provided these inaccurate answers. Allegedly, Defendant Payne spoke with an insurance agent while completing the form. He testified that the following exchange took place:
Q. Tell me about the conversation that you had with the lady at AOPA where you arrived at that 3,000 total all aircraft hours?
A. Basically when she asked that question, she said, "How many do you have?" And I asked the question, I said, "Are you retaining [sic] to pilot in command hours or are you retaining [sic] to total aircraft hours?" I said, "Can you specify what you're actually asking?" She said, "Well, just give me your total of all aircraft hours." So that's what I did, so, you know, assuming military experience, because that counts as flight hours. And so that's where I came up with around 3,000.
(Doc. 49-2 at 22). Defendant Miller testified that he overheard part of this telephone conversation. (Doc. 55 at 15-16). On this basis, Defendant Payne argues that he truthfully answered the insurance agent's question as he understood it, and that therefore, there was no misrepresentation. (Doc. 52 at 2). In regard to his inaccurate model hours, Defendant Payne testified:
Q: And then "Model," it means you had, what, 15 hours in a Mooney of some sort?
A: That's what it is specifying on paper. Like I said, I asked the lady, "Are you specifically talking about this or similar type?" And that's where - you know, the retractable *863 gear time [sic]. So we said that for the model is what she put down.
(Doc. 59 at 5).
Defendant Payne also testified that he spoke with Plaintiff's insurance agent again when he received the application in the mail, he stated:
Q: Do you recall how you sent [the application] back, or do you know?
A: I'm sure regular mail. And I think it needs to be stated for the record that I did contact them when I received this about that information, and they told me just to sign it and send it back.
Q: About what information?
A: About that this right here - because I was like, "I have my logs." I said, "We can actually go through this." And they told me just to sign it and sent it back in.
(Id. at 25). Despite his concern that his answers were not accurate, it is undisputed Defendant Payne signed the application and by doing do, verified his answers as correct.
In her Response, Defendant Thomas more fully articulates the argument that the Total All Aircraft question was ambiguous, meaning that the interpretation of the contract is a question of fact. (Doc. 54). According to Defendant, the question "could be fairly understood in more than one way." (Id. at 3). Either it could be seeking the number of hours Plaintiff actually piloted an airplane, or, as Plaintiff understood, the total number of hours Plaintiff had spent in an airplane. (Id. ). Because the language of the contract is allegedly vague, Defendant Thomas insists that the Court must construe the ambiguity against Plaintiff, thus preventing the grant of summary judgment, as Plaintiff's response was perhaps, in fact, truthful. (Id. at 4).
To determine whether a written or oral statement constitutes a misrepresentation, the court must first decide "what the insurer asked, required, or expected the applicant to represent." Gatlin , 616 S.W.2d at 608. "Where a question on an application is specific and unambiguous, it can be easily determined whether the answer is true or not." Frank v. Nationwide Mut. Fire Ins. Co. , 2006 WL 861392, at *4 (M.D. Tenn. Mar. 28, 2006) (citing Gatlin , 616 S.W.2d at 608 ). "However, where a question on an application is broad and ambiguous, it is a question of fact whether the answer given to the question was true or false." Id. (citing Ferrell v. Nationwide Mut. Fire Ins. Co. , 1986 WL 13505 (Tenn. Ct. App. Dec. 3, 1986) ). "Under Tennessee law, a contractual term is ambiguous only if it is 'of uncertain meaning and may fairly be understood in more ways than one.' " Id. (quoting Farmers-Peoples Bank v. Clemmer , 519 S.W.2d 801, 805 (Tenn. 1975) ). While the issue of whether an insured's representations on an application are true or untrue are normally a question of fact, a court may decide the issue where "minds of reasonable men could reach only one conclusion as to their truth or falsity." New Hampshire Ins. Co. v. Blackjack Cove, LLC , 2014 WL 1270984, at *6 (M.D. Tenn. Mar. 26, 2014) (internal quotations and citations omitted).
Upon review, the Court disagrees with Defendants that the language in the application was ambiguous. The pertinent language in the application itself is abundantly straightforward. The inquiry for "Total All Aircraft" hours is located under the heading of "Total Logged Pilot Hours." (Doc. 17-3) (emphasis added). This question may only be reasonably interpreted as requesting the number of hours the individual has piloted an aircraft. Moreover, Defendants' suggested reading of the application defies common sense. Defendants *864 fail to articulate why an insurer debating whether to issue a policy on an aircraft would have any reasonable interest in the number of hours the requesting pilot had ridden in an airplane as a mere passenger. Such information has no bearing on the pilot's ability to operate the aircraft safely, which is naturally the insurer's main concern when calculating risk. Thus, because the disputed contractual term has a certain meaning and may only be understood in one way, the Court cannot conclude that the application is ambiguous in this respect.
Defendants repeatedly refer to Payne's confusion regarding the question in support of their argument that the language in the application is ambiguous. As stated by one Court, however, "If plaintiff did not understand the questions, she should not have signed the document." Wear v. Transamerica Life Ins. Co. , 2007 WL 3238867, *10 (E.D. Tenn. Nov. 1, 2007). Further, the fact that Plaintiff may have been confused by the question does not render the same question ambiguous as a matter of law. Finally, the Court finds Defendants' reliance on the allegation that Payne had nothing but the best of intentions while completing the application to be misplaced. After all, § 56-7-103 permits an insurer to deny coverage even where a misrepresentation is made with no intent to deceive. Thus, notwithstanding Payne's state of mind while filling out the application, Plaintiff may still deny coverage.
Defendants also refer to various insurance agents involved in the application process whose statements may have misled Payne to list incorrect or incomplete information. According to Defendants, these statements render the interpretation of the language a question of fact that a jury must answer. However, statements by an insurance agent during a policy application process, or by any individual forming a contract, are inadmissible unless the language at issue is ambiguous. See Owensby v. State Farm Fire and Cas. Co. , 2010 WL 3565705, at *13 (Tenn. Ct. App. Sept. 15, 2010) (holding that a plaintiff who signed an unambiguous insurance application cannot "attempt to rely upon alleged oral statements to or by the insurance agent[.]") (citing Tenn. Farmers Mut. Ins. Co. v. Farrar , 337 S.W.3d 829, 838 (Tenn. Ct. App. 2009) ); Faithful v. Gardner , 799 S.W.2d 232, 235 (Tenn. Ct. App. 1990) (holding that "[t]estimony of prior or contemporaneous conversations for the purpose of altering, contradicting, or varying the terms of the written instruments are incompetent and inadmissible[ ]" unless there is ambiguity in the contract). Because the Court has already found the application in this case to be unambiguous, such statements cannot be considered, and Defendants' arguments in this regard are without merit.
In addition, several courts have specifically concluded that the involvement of an insurance agent during the application process does not "prevent[ ] the application of § 56-7-103." Wear , 2007 WL 3238867 at *11 ; Smith , 210 S.W. 3d at 587. For instance, in Smith , the insured was asked questions by an agent who then recorded his answers on a form the insured later signed. Id. The Court held that even if the agent had recorded the answers incorrectly, § 56-7-103 still applied "so long as [the insured] thereafter signed the application filled out by the agent." Id. at 587 & n.7. Thus, even if an insurance agent's involvement in this case led to Defendant Payne's false or incorrect answers, he nonetheless remains bound by the misrepresentation.[2]
*865 On a final note, the Court takes notice that the 3,000 hour statement was not the only misrepresentation provided by Payne on the application, although it is the statement the parties' focus upon in their briefs. Plaintiff briefly notes that Payne also misrepresented his flight hours in the model aircraft sought to be insured. (Doc. 49-2 at 4). Similar to a pilot's total flight hours, and as will be more fully set forth below, these credentials also appear to be directly relevant to an insurer's risk of loss. Thus, notwithstanding Defendants' arguments regarding the alleged ambiguity of the total hours question, it appears that Plaintiff still made a misrepresentation on his application.
For the reasons set forth above, the Court finds that Plaintiff has sufficiently established that Plaintiff made a misrepresentation of fact on his application seeking coverage.
2. Whether the Misrepresentation Increased Plaintiff's Risk of Loss
Having concluded that Defendant Payne made a misrepresentation, the Court must now decide whether that misrepresentation increased Plaintiff's risk of loss. In Tennessee, a misrepresentation in an application for insurance increases the insurer's risk of loss if it naturally and reasonably influences the judgment of the insurer in making the contract. Smith , 210 S.W.3d at 590. It is well settled that the court may use the questions an insurance company asks on its policy application to determine the kinds of conditions or facts the insurer considers relevant to its risk of loss. Id. (citing Johnson v. State Farm Life Ins. Co. , 633 S.W.2d 484, 487 (Tenn. Ct. App. 1981) ). In addition, Tennessee courts "frequently rely on the testimony of insurance company representatives to establish how truthful answers by the proposed insured would have affected the amount of the premium of the company's decision to issue the policy." Id. (citations omitted). And finally,
A finding that the insurer would not have issued the policy had the truth been disclosed is unnecessary; a showing that the insurer was denied information that it, in good faith, sought and deemed necessary to an honest appraisal of insurability is sufficient to establish the grounds for an increased risk of loss.
Id. (citations omitted)
In support of its Motion for Summary Judgment, Plaintiff submits the affidavit of Christine Artinger, an underwriter, in which she avers that Payne's application would have been evaluated differently if he had provided accurate responses. (Doc. 49-2 at 3-6). Specifically, Artinger states that Plaintiff would have "required a checkout process with a Certified Flight Instructor prior to determining whether or not to bind coverage and allow him to fly solo." (Id. at 5.)
Plaintiff also argues that, "[a] pilot's experience is critical to his or her insurability." (Doc. 49-1 at 11). This Court agrees. The amount of flight experience an individual possess appears to "naturally and reasonably" influence an insurer's decision to issue a policy on an airplane. Smith , 210 S.W.3d at 590. The Court also notes that questions regarding pilot experience comprised a major portion of the application.
*866 Id. Finally, in the section devoted to "Other Pilots" permitted to fly the insured airplane, Plaintiff required, "Private pilots or better, with instrument rating and, minimum 750 logged hours, 150 hours retractable gear, and 10 hours make/model." (Doc. 17-3 at 1). Given these requirements, the Court may easily conclude that Payne's actual logged time of 80.1 hours would have prompted Plaintiff to consider his application differently.
Therefore, for these reasons, and because the Court may rely on the sworn statement of Plaintiff's representative Christine Artinger, the Court finds that Plaintiff has sufficiently established this element.
Accordingly, because it has proven its claim by a preponderance of the evidence, Plaintiff's Motion for Summary Judgment will be GRANTED. Plaintiff has no duty to defend or otherwise indemnify Defendants in regard to the underlying accident or the various state court actions.
E. Default Judgment as to Defendant Citizens Bank
As previously mentioned, Plaintiff has already sought a judgment of default as to Defendant Citizens Bank, which the Court denied with leave to refile. (Docs. 33, 34). Plaintiff now renews this motion. For sake of clarity, the Court will briefly recount the underlying circumstances of Plaintiff's prayer for relief.
Summons issued as to Defendant Citizens Bank on July 1, 2016. (Doc. 18). Summons was returned executed on July 18, 2016. (Doc. 23). The proof of service reflects that the CEO of Citizens Bank, Pete Williston, was personally served on July 8, 2016. (Id. at 2). Because Citizens Bank filed no answer or responsive pleading, Plaintiff filed its Application for Clerk's Default as to Citizens Bank on August 26, 2016. (Doc. 30). The Clerk of Court entered a default against Citizens Bank on September 20, 2016. (Doc. 32). The next day, Plaintiff filed its Motion for Default Judgment (Doc. 33). To date, Citizens Bank has neither responded to Plaintiff's motion nor entered an appearance in this matter.
Federal Rule of Civil Procedure 55 permits the Court to enter default judgment against a nonresponsive party. Fed. R. Civ. P. 55. Rule 55 serves as a deterrent to those defendants that "resort[ ] to delay as an element of their litigation strategy." Wilson v. Winstead , 84 F.R.D. 218, 219 (E.D. Tenn. 1979). When considering a motion for default judgment, Federal Rule of Civil Procedure provides that the court "may conduct hearings or make referrals ... when, to enter or effectuate judgment, it needs to ... (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2) (emphasis added). In the Sixth Circuit, when considering a default judgment motion, courts consider "1) possible prejudice to the plaintiff; 2) the merits of the claims; 3) the sufficiency of the complaint; 4) the amount of money at stake; 5) possible disputed material facts; 6) whether the default was due to excusable neglect; and 7) the preference for decisions on the merits." Russell v. City of Farmington Hills , 34 F. App'x 196, 198 (6th Cir. 2002) ; United Coin Meter Co., Inc. v. Seaboard Coastline R.R. , 705 F.2d 839, 845 (6th Cir. 1983). If there are multiple defendants in a case, the "preferred method" is to withhold granting a default judgment motion until the merits of the action have been decided against the remaining defendants. Loyless v. Oliveira , 2010 WL 2735758, at *5 (E.D. Tenn. July 12, 2010).
The Court denied Plaintiff's earlier motion for default because identical claims *867 against the other five Defendants were pending at that time. Because the Court has now resolved those claims, there is no danger of an inconsistent judgment. Further, the factors set forth by the Sixth Circuit in Russell also weigh in favor of judgment against Citizens Bank. First, if Citizens Bank were to challenge its right to indemnity under the insurance policy at issue after the fact, and following extensive motions practice in this case, Plaintiff would undoubtedly encounter prejudice. As to the remaining factors, Plaintiff's claims against Citizens Bank are identical to those alleged against the other Defendants, which seek no monetary damages and have been found to be meritorious. Finally, it appears that Citizens Bank's failure to appear is based on its own neglect, as the record reflects that it was personally served with process and simply elected not to appear.
As all of these factors weigh in favor of default judgment, the Court will GRANT Plaintiff's Motions for Default Judgment. (Doc. 49).
IV. CONCLUSION
For the reasons set forth above, Plaintiff USSIC's Motion (Doc. 49) requesting summary judgment as to Defendants Payne, Lombard, Adam Miller, Elizabeth Miller, and Thomas and default judgment as to Defendant Citizens Bank is hereby GRANTED . The final pretrial conference and trial currently scheduled in this matter are hereby CANCELLED . A separate judgment shall enter.
SO ORDERED this the 28th day of November, 2017.

See Grand Trunk W. R. Co. v. Consol. Rail Corp. , 746 F.2d 323 (6th Cir. 1984).

In their Responses (Docs. 55 & 59), Defendants Adam Miller and Michael Lombard suggest that Payne's responses to the application as well as his confusion should have prompted Plaintiff or its agents to ask follow up questions or otherwise clarify the nature of Payne's flight experience. Miller and Lombard cite no authority in support of this argument and fail to provide any reasoning as to why this should entitle them to relief. The Court declines to formulate legal arguments for these Defendants, and thus, it will not examine their conclusory statements here.